PROVOSTY, J.
The plaintiff, Kettering-ham, contracted to construct a building for one of the defendants, the Eureka Homestead Society. After the contract had been recorded and bond given in accordance with Act 221, p. 418, of 1914, “the parties” agreed orally to substitute a hot-water heating system to the hot-air heating system called for' by the contract; the additional cost to be added to the price of the contract.
For the installation of this hot-water system the plaintiff, Ketteringham, contracted with one Edwin Salzer, who did the work, and was paid in full, but failed to pay for the materials that went into it.
His brother, Alfred Salzer, one of the defendants, paid the debt, and obtained from the furnisher of the materials a written subrogation, and recorded the claim, as required of furnishers of materials by said Act 221 of 1914. He did not, however, “file a sworn statement thereof with the owner,” as required by said act..
The defendant the Eureka Homestead Society paid the plaintiff, Ketteringham, all that was due for the building, except am amount sufficient to satisfy the claim thus recorded, which, in obedience to said Act 221 of 1914, it retained; and the plaintiff, Ketteringham, brought this suit against Alfred Salzer, said society, and the recorder of mortgages, to have said recordation canceled and said amount paid to him.
He contends that said debt does not come within the purview of said Act 221 of 1914, for the reason that, the only debts said act has reference to are those incurred by the main contractor, not those incurred by a subcontractor, and for the further reason that, at all events, the only debts it has reference to are those incurred for carrying out the contract that is required by it to be reduced to writing and recorded and bond to be given for, not to a debt incurred, as in this case, for carrying out some other contract subsequently entered into, or, in other words, for doing work not called for by the recorded contract, but outside of it, as in the present case. He also contends that the subrogation to Alfred Salzer was only of the personal claim against Edwin Salzer, not of the rights of privilege, etc., if any there were, accessory to said claim; and he contends, finally, that no sworn statement of said claim was “filed with the owner” of the building as said Act 221 of 1914 requires in order that a claim should be entitled to the benefit of its provisions.
*179 [1] Both the district court and the Court of Appeal decided in favor of plaintiff, holding that, in the words of the syllabus of the decision of the Court of Appeal:
“Act 221 of 1914 is not as broad as Act 180 of 1894, and grants a privilege only to those having claims against the undertaker; those having claims only against subcontractors are granted no privilege by that act.”
It is very evident, from a mere reading of the statute, which we give in the margin,[1] that the only debts it has reference to are such as have been contracted in the execution of the contract, which it requires to be reduced to writing and recorded. If, therefore, the debt in. question in the present case was not of that character, the statute has no application, and Alfred Salzer has no case, and the other contentions, as to the proper interpretation of the statute, and as to whether its requirements have been complied with, do not arise in the case, and do not have to be considered. Whether this debt was contracted in execution of the contract that was recorded is therefore the first question to be considered in logical order.
[2] We think it was. “The parties” (by which we necessarily understand all the necessary parties, namely: the contractor, the owner and the surety on the bond) agreed that this hot-water system should be substituted to the hot-air system called for by the contract. Thereby they did not intend to and did not, in fact, make a new, separate, and independent contract, but intended to and did amend the existing contract in this particular. They intended that the existing contract should stand as thus amended, and should, as thus amended, be the one and only contract for the construction of the building. How far this same view might be taken in a case where the change in the contract was so important as to constitute a new and independent contract, or in a case where the right of third parties might be concerned, we will not stop here to inquire. Suffice it to say, that it does not, under the circumstances of this case, lie in the mouth of either the owner, the contractor, or the surety to contend that this change which they made in the one and only contract which they caused to be recorded for the construction of. the building was a separate and independent contract, forming no part of the contract for the construction of the building.
On the point, however, of whether said Act 221 of 1914 has reference only to the debts of the main contractor, and not also to those of the subcontractor, we have to agree with the two lower courts, and overrule Brink v. Bartlett, 105 La. 336, 29 South. 958, interpreting Act 180 of 1894, if at all in conflict, which is far from clear. For we have to take this Act 221 of 1914 as it is written, not as it might perhaps have been intended to be written, or as Act 262 of 1916, amending it, is written. The latter act reads:
“Every person having a claim against the undertaker, contractor, subcontractor, master mechanic or engineer shall, after the date of the completion of the said work file sworn statement thereof with the owner,” etc.
Whereas said Act 221 of 1914 reads:
“Every person having a claim against the undertaker, contractor, master mechanic or engineer shall,” etc.
—leaving out the word “subcontractor.”
Throughout the act the words “undertaker, contractor, master mechanic, or engineer” are grouped as we here find them, and are manifestly intended to designate the main contractor and no one else. If confirmation of this were needed, it would be found in the following extract from the brief of Alfred Salzer’s learned counsel in this case:
“Your honors will also notice that the four designators of the main contractor, to wit, undertaker, contractor, master mechanic, and engineer, have reference to one and the same person, namely, the builder or main contractor.”
*181 The act speaks throughout of persons hav- ’ ing claims against the “undertaker, contractor, master mechanic or engineer,” meaning, as wé have seen, the main contractor, and says not a word touching claims against the subcontractor. It is only the act of 1916 that speaks of claims against the subcontractor.
[3] The statute, being in derogation of common right, must be strictly construed. It cannot be extended by implication so as to include persons not coming within its terms. That this statute is in derogation of common right is plain, since it forces upon the owner and the contractor obligations in favor of third persons which they have not voluntarily consented to and which would otherwise not exist.
[4] As to the necessity of this statute being strictly construed the learned counsel of Salzer agrees, but concludes therefrom as follows:
“Therefore, where the law fails to limit the subcontractor and furnisher to any particular class, a strict construction of the law is that it did not intend to make any distinction or plaee any limitation, and that consequently it includes all those who are subcontractors and all those who are furnishers of material and labor in relation to the building under discussion.”
As we understand this argument, it is that, as the obligation of the bond which the law requires to be given in favor of the furnisher of materials is not in terms restricted to materials furnished to the main contractor, ✓but in terms extends to all furnishers, the act in terms embraces the furnisher to the "subcontractor.
This argument loses sight of the fact that in the construction of a law one part must not be taken independently, but always in connection with all other parts, and that the other parts of this statute are not susceptible of any other construction than that the persons who, under the statute, may record a claim and notify the owner are those alone who have claims against the main contractor.
This defect in the law, if defect it be, has now, by the act of 1916, been remedied; so that the question is not likely to arise again.
Judgment affirmed, at cost of relator.
NOTE.
Act No. 221, 1914.
To amend and re-enact section one of Act 167 of 1912, approved July 11, 1912, entitled, “An act relative to building contracts in this state, providing for the bond to be given therein, for the protection of the owner, subcontractor, workman, laborer, mechanic, and furnishers of materials, for the recordation of the same, and the proceedings to be had thereunder.”
Section 1. Be it enacted by the General Assembly of the state of Louisiana, that section 1 of Act No. 167 of the General Assembly of the state of Louisiana for the year 1912, be amended and re-enacted so as to read as follows :
“Section 1. Be it enacted by the General Assembly of the state of Louisiana that every contract for $500.00 or more hereafter made or entered into for the repair, reconstruction, erection or construction of any work by an undertaker, contractor, master mechanic or engineer, shall be reduced to writing and signed by the parties, under private signature, or authentic act, and shall be recorded in the office of recorder of mortgages of the parish wherein the said work is to be executed, before the day fixed on which said work is to commence and not later than thirty days after the date of said contract and such recordation shall create a lien and privilege on the building and grounds or other work so repaired, reconstructed, erected, or constructed, in favor of the said undertaker, contractor, master mechanic, engineer, subcontractor, workman, laborer, mechanic or furnish-er of materials as their interest may occur. The owner of such work shall require of said undertaker, contractor, master mechanic, or engineer a bond with good and solvent surety as follows: For all contracts aggregating over $500.00 to $100,000.00 inclusive surety shall be required for not less than one-half the amount of the contract. For all contracts aggregating over $100,000.00 to $1,000,000.00, inclusive, surety shall be required for not less than one-third the amount of the contract. For all contracts over $1,000,000 surety shall be required for not less than one-fourth of the amount of the contract price, which bond shall be attached to and recorded with the contract in the mortgage office as above set forth, and the conditions of the bond shall be the true and faithful performance of the contract and the payment of all subcontractors, workmen, laborers, mechanics and furnishers of materials by the undertaker, contractor, master mechanic or engineer, the said bond to be made in favor of the owner, subcontractor, workmen, laborer, me *183 clianies and furnishers of materials jointly as their interest may occur. Every person having a claim against the undertaker, contractor, master mechanic or engineer shall, after the date of the completion of the said work by, or the date of default of the undertaker, contractor, master mechanic or engineer, file a sworn statement thereof with the owner and record a sworn statement thereof or his contract if it has been reduced to writing in the office of the recorder of mortgages for the parish in which the said work has been done, within thirty days after the register of notice with the recorder of mortgages of the parish where the work is done, by the owner of his acceptance of the work, until which time the delay to file privileges will not run. If at the expiration of the said thirty days there are no such recorded claims filed, the recorder of mortgages shall, upon written demand of any party interested, cancel and erase from the books of his office all inscriptions resulting from the recordation of said contract or bond. If at the expiration of .said thirty days there are such recorded claims filed, the owner shall file a petition in a court of competent jurisdiction citing said claimants, the undertaker, contractor, master mechanic or engineer, against whom said claims are filed and the surety of said bond, and the owner shall assert whatever claim he has against any or all of them in said petition and require said claimants to assert their claims, and all of said claims shall be trie'd in concursus. In the event that the owner has a claim in concursus with the other claimants who have a lien and privilege under the provisions of this act, they shall be paid in preference to the owner. If no objections are made by any of the said claimants to the sufficiency or solvency of said bond within ten days after the filing of said concursus, the clerk of the court shall give to any party interested a certificate to that effect and on presentation of said certificate to the recorder of mortgages he shall cancel and erase all inscriptions created by .the recordation of said contract, bond or said claims.
“If objections are made to the sufficiency or solvency of the surety, they shall be tried summarily and if the surety is found to be not solvent or insufficient to cover the full amount for which he is bound, or if the owner fails to exact bond, or if he fails to cause same to be recorded in the office of the recorder of mortgages in the manner or in the time hereinabove provided the owner shall be in default and shall be liable to the same extent as the surety would have been, and all subcontractors, workmen, laborers, mechanics and furnishers of materials shall have a first privilege on said building or improvement to secure the amount due them when their claims are recorded as herein provided. The surety herein shall be limited to such defenses only as the principal on the bond can make. The purpose of this act is to require owners to secure bonds with solvent and sufficient security of the undertaker', contractor, master mechanics or engineer for the protection of all parties interested in the contract, and as their interest may occur, and said surety, and in default of surety the owner is to stand in the place of a defaulting undertaker, contractor, master mechanic or engineer.”
And provided, that the owner shall not make the last payment due on said contract until the thirty days during which liens may be filed in accordance with the provisions of this act have elapsed.
Sec. 2. Be it further enacted, etc., that all laws or parts of laws in conflict with the provisions of this act be and same are hereby repealed.

 See note at end of case.