SHREVEPORT ARMATURE & ELECTRIC WORKS, Inc., v. HARWELL et al.*
No. 5386.

Court of Appeal of Louisiana. Second Circuit.

Feb. 5, 1937.

*Rehearing denied March 1, 1937.

464

Hoye Grafton, of Shreveport, for appellant.

Blanchard, Goldstein, Walker & O'Quin, of Shreveport, for appellees.

DREW, Judge.

Mrs. Adelle Bath Goldstein is the owner of a one-story building on Texas avenue, in the city of Shreveport. On February 3, 1934, she leased the said building to Marion L. Harwell and James T. Harwell for a period of five years, beginning February 15, 1934, and ending at midnight February 14, 1939. The property leased is described as follows:

"That certain property owned by her in the City of Shreveport, Louisiana, known as Municipal Nos. 1831-33, Texas Avenue, the legal description of which is Lot 6 of the Perry Keith Subdivision, City of Shreveport."

The pertinent parts of said lease, in so far as the present suits are concerned, are as follows:

"The leased premises shall be used by the Tenants for the purpose of conducting a theatre therein. The improvements on the property in their present condition are not suitable for use as a theatre; and the Tenants agree at their own expense to make such alterations and repairs as are required to enable the property to be used for the operation of a theatre. Such alterations and repairs, however, shall not be made until plans and specifications therefor shall have been presented and submitted to the Lessor and approved by her and all of such alterations and repairs shall be made in strict accordance with the rules and regulations of the Building Inspection Department of the City of Shreveport and of the National Board of Fire Underwriters.

"Upon the termination of this lease from any cause whatsoever all of the permanent improvements and additions to the premises, such as plumbing and plumbing fixtures and partitions, shall be and become the property of the Lessor without any payment therefor by her, this being a part of the consideration passing to her for granting this lease.

"Before making such alterations and repairs or letting any contracts relative thereto, the Tenants shall furnish the Lessor with a bond with James T. Harwell, Jr., as surety, to secure the Lessor against the failure of the Tenants to pay the entire cost of such alterations and repairs and against the filing of any lien against the property of the Lessor or against this lease arising from a claim for labor or materials furnished in the making of such repairs and

alterations. This bond shall be on the form to be prepared by the attorneys of Lessor and all of the parties thereto shall be solidarily bound for the performance of its conditions.

"Upon the expiration of this lease, whether at the end of the 5-year period or earlier as herein provided, the Tenants bind and obligate themselves to restore the premises to the Lessor in a condition suitable for use as a one-room store building with plate glass and tile front similar to the front on the building at the time of its delivery to the Tenants; provided, however, that if the lessor so elects the Tenants shall restore the building to the Lessor in the condition in which it shall be after the making of the alterations and improvements by them, the ordinary wear and tear resulting from a careful use of same excepted."

After the execution of said lease, the lessees began making repairs and alterations on the building to make it suitable for a moving picture house. It had previously been used for a mercantile business. In making said alterations and repairs, they became indebted to the plaintiff, Shreveport Armature & Electric Works, Incorporated, for electrical materials and labor to install it in the sum of $1,029.87, and within the 60-day period, dating from the last labor performed and last materials furnished, it filed for record a lien against Mrs. Goldstein's property. All formalities of law regarding the preservation of such a lien were complied with. The lessees also became indebted unto Bolinger Gain-Yay, Incorporated, for materials used in said repairs on the building in the amount of $1,300.87, and the formalities of law necessary to preserve its lien as a furnisher of materials were exercised by it.

Each of the said lienholders filed suit against Mrs. Goldstein and lessees to have their liens recognized and enforced against the property of Mrs. Goldstein, described in the lease contract, and for personal judgment in solido against all defendants.

In the alternative, they prayed for judgment recognizing and enforcing their liens against the property of Mrs. Goldstein and, in the further alternative, for judgment against the interest of said lessees in said property by virtue of said lease.

The two suits involve the same issues and are against the same defendants and, by agreement of counsel, were consolidated for purpose of trial below.

Mrs. Goldstein denies she is indebted unto plaintiffs in any sum or that they are entitled under the law to a lien against her property. She contends the debt is due solely by lessees and that the privilege and lien as furnishers of materials and labor attaches only to the lessees' interest in and to her property, by virtue of the lease contract. The lessees defaulted on the contract of lease; and she secured a judgment on said lease contract and executed same by selling lessees' interest in said lease, also the personal property of lessees found on the premises. She contends that the lien claimed by plaintiffs attached only to the proceeds derived from said sale.

The lower court awarded judgment for plaintiffs against the lessees and recognized their liens against the proceeds derived from the sale of lessees' interest in the property under the lease contract, and the personal property found on the leased premises. It rejected plaintiffs' demands against Mrs. Goldstein and ordered the liens canceled as to her property, subject of the lease. Plaintiffs are now prosecuting appeals from those judgments.

In their brief appellants correctly state the issues for determination here when they say the case involves only a decision on the individual liability of Mrs. Goldstein and whether or not the lien and privilege of plaintiffs operates against the property involved in the lease contract, in which the materials were used and labor performed and which is owned by Mrs. Goldstein. It is recognized by all parties to this litigation that the rights and liabilities of the parties and extent of plaintiffs' liens and privileges are to be determined under the provisions of Act No. 298 of 1926, an act relative to building contracts.

There is no serious dispute over the fact that the materials were furnished and labor performed in the amounts claimed by plaintiffs; and there is no dispute over the timely filing and recording of the liens. The controversial contention in the case is whether sections 1, 6, and 12 of the act govern, or whether section 11 is controlling? Plaintiffs contend for the first and defendant for the second.

Sections 1, 6, and 12 of said act read as follows:

"Be it enacted by the Legislature of Louisiana, That every contractor, sub-contractor, architect, engineer, master-mechanic, mechanic, cartman, truckman, workman, laborer, or furnisher of material, machin-

ery or fixtures, who performs work or furnishes material for the erection, construction, repair or improvement of immovable property, with the consent of or at the request of the owner thereof, or his authorized agent, or representative, or of any person with whom the owner has contracted for such work, shall have a lien for the payment in principal and interest of such work or labor performed, or materials, machinery or fixtures furnished, and the cost of recording such liens, upon the land and improvements on which the work or labor has been done, or materials, machinery or fixtures furnished, which lien and privilege, if evidenced as herein provided, shall be superior to all other claims against the said land and improvements except taxes and local assessments for public improvements or a bona fide vendor's privilege whether arising from a sale, or arising from a sale and resale to and from a regularly organized homestead or building and loan association, or a bona fide mortgage, provided said mortgage or vendor's privilege exists and is recorded before the work or labor is begun or any material is furnished; provided, however, that the claim for wages of a laborer, for the work actually performed by said laborer on any building, shall, when presented and recorded by said laborer in accordance with the terms of this Act, create a lien on the land and improvements, which will prime the rights of mortgagees or vendors. * * *

"If the bond is found to be insufficient in amount or not to have a proper and solvent surety, or if no bond has been furnished or recorded within the time hereinbefore provided, but the contract has been timely recorded, the owner shall be personally liable to sub-contractors, journeymen, cartmen, workmen, laborers, mechanics, furnishers of material, or any other persons furnishing labor, skill or material on said work who recorded and serve their claims as provided in Section 3 hereof, to the same extent as is the contractor, and said personal liability as well as the privilege hereinabove provided for, shall remain in full force and effect for one year from the date of filing of such claim, as provided in Section 2 hereof unless interrupted by judicial proceedings. In all cases where surety has been furnished, as between such surety and any claimant for labor or material or any sub-contractor, journeymen, cartmen, truckmen, or mechanic, the surety shall be entitled to make only the same defense as the contractor for whom he signed as surety is authorized to make; but as between the surety and the owner, the surety may urge any defense growing out of any violation by the owner changing the contract without the consent of the surety, including the defense that the owner has made anticipated payments, to the extent that the surety is damaged by such violation or anticipated payment. * * *

"When the owner, or his authorized agent, undertakes the work of construction, improvement, repair, erection, or reconstruction, for the account of the said owner, for which no contract has been entered into, or when a contract has been entered into but has not been recorded, as and when required by this act, then any person furnishing service or material or performing any labor on said building or other work may record in the office of the Clerk of Court or Recorder of Mortgages of the parish in which said work is being done or has been done a copy of his estimate or an affidavit of his claim or any other writing evidencing same, which recordation, if done within sixty days after the date of the last delivery of all material upon said property or the last performance of all services or labor upon the same, by said furnisher of material or said laborer, shall create a lien and privilege upon the building or other structure and upon the land upon which it is situated, in favor of any such person who shall have performed service or labor or delivered material in connection with the said work of improvement, as his interest may appear. Said lien and privilege, recorded as aforesaid, shall constitute a lien and privilege, against the said property for a period of one year from the date of its filing, unless interrupted by judicial proceeding, during which judicial proceeding said prescription shall not run. Any person furnishing service or material or performing any labor on said building or other work to or for a contractor or sub-contractor, when a contract, oral or written has been entered into but no contract has been timely recorded, shall have a personal right of action against the owner for the amount of his claim for a period of one year from the filing of his claim, as provided in this Section, which right of action shall not prescribe during the pendency of judicial proceedings; provided, that this shall not interfere with the personal liability of the owner for material sold to or services or labor performed for him or his authorized agent. Said lien and

privilege shall be superior to all other claims against the said land and improvements except taxes, local assessments for public improvements, a bona fide mortgage, or a bona fide vendor's privilege, whether arising from a sale or arising from a sale and resale to and from a regularly organized homestead or building and loan association, if said vendor's privilege or mortgage exists and has been duly recorded before the work or labor is begun or any material is furnished; provided, however, that the wages of a laborer for work done by him on any building, shall, when presented and recorded by him in accordance with the provisions of this Act, create in his favor a lien and privilege on the land and improvements which will prime the rights of mortgagees or vendors."

And section 11 provides as follows:

"Where any work as hereinabove set forth, is done on buildings or other improvements made, where the person for whom the work is done or with whom the contract is made, or by whom the work is done, is not the owner of the land upon which the work is located, then he shall be subject to all the obligations that are made incumbent on the owner by this act, and the liens and privileges created and established by this act shall operate upon whatever right said person having the work done or doing the work may have to the use of the land as lessee; and said lien and privilege shall operate against the lease such person holds, if there is one, or if said work is caused to be erected by a mineral lessee, then the privilege shall exist against the mineral lease and whatever rights the lessee may have therein, thereon or thereto; provided, however, that the privileges hereby created shall not interfere with the lessor's lien and privilege or his right to demand and recover occupancy of the leased premises in default of the payment of rent, or his right to sell the lease or right of occupancy under any judgment he may obtain against his lessee growing out of the lease; and in the case of such sale, the privileges herein created shall be restricted to the proceeds of sale, and shall not follow the property, the lease or the right of occupancy."

Plaintiffs contend that their liens attach to the land and improvements owned by Mrs. Goldstein, under the provisions of section 1 of the act, for the reason her consent was given and that the improvements were made at her request and under positive directions, all of which they claim is shown by the lease contract and by the provisions

therein, which we have heretofore quoted. They contend they are entitled to a personal judgment against her because of her failure to file and record a contract and bond from her agents or contractors, as provided by sections 6 and 12 of the act. There is no contention by plaintiffs that they are entitled to either of the above judgments because of the enhanced value of the property, due to the improvements made. In passing, we will state that the repairs and alterations made on said property did not enhance the value of it, but caused a deterioration in value, and, in order to make the building fit for use for any commercial purpose, it will necessitate an outlay of several thousand dollars by Mrs. Goldstein, due to the faulty manner in which the alterations were made.

We are convinced that section 11 of Act No. 298 of 1926 is controlling in this case, unless the contract of lease contains provisions which would take the case out of the general rule. The decisions of our court are uniform in holding in effect that where a lessee makes improvements upon his lessor's property without the knowledge or consent of the lessor, liens for materials and labor attach only to the interest of the lessee in the leased property. They are likewise uniform in holding, where there is an expressed contract between the lessor and lessee, that the improvements made on the property by the lessee are to be at lessee's expense; that the liens and privileges arising therefrom only attach to the lessee's interest in the property. Callender v. Marks (La.App.) 166 So. 891; Klema Realty Company v. Fauria, 15 La.App. 7, 130 So. 569; Jackson Homestead Ass'n v. Zimmer, 16 La.App. 647, 134 So. 126; Shreveport Long Leaf Lumber Company v. Parker (La.App.) 144 So. 153; Boutte & Courrege v. Derokay (La.App.) 168 So. 39.

The law is clear that statutes in derogation of common rights, such as those creating civil penalties and privileges, are to be strictly construed and are not extended by analogy or implication, or through consideration of equity. American Creosote Works v. City of Natchitoches, 182 La. 641, 646, 162 So. 206.

Another unbending rule is that privileges must be strictly construed and if there is ambiguity in the statute under which the privilege is claimed, therefore making the statute subject to two different constructions, the interpretation most fa-

vorable to the one against whom the privilege is claimed must be adopted. All doubt must be resolved against the one claiming the privilege. Whenever possible a statute should be construed so as to give meaning to each and every section thereof and the construction placed on any one section should not be such as to obliterate another section of the same statute, where the construction can be otherwise. With the above rules in mind, the proper construction to place upon the statute with which we are dealing is that section 1 deals with the granting of liens against the property of the owner when he is improving his property by having the work done himself or through his agents or representatives, or by contract. Sections 6 and 12 provide for personal judgments against the owner for failure to secure and record a solvent bond, or to secure and record a contract where the owner makes the improvements by contract. Section 11 provides for a lien and to what it shall attach when the work is done by a lessee and one who is not the owner of the land, whether done by the lessee through his agents or representatives, or by contract with the lessor.

When we construe the three sections together, we find that when the owner has the repairs or improvements made on his own property, does the buying of materials, and hiring of labor, a lien for materials and labor attaches to his property and he is also personally liable. When he has the work done by contract and fails to record the contract within the time required by the statute and fails to secure a solvent bond and record it to protect materialmen and labor, he is also liable personally and the lien created thereby attaches to his property. When he records his contract, secures the necessary bond, and records them in the time fixed by law, he is not personally liable and a lien for materials furnished and labor performed does not attach against his property, but is relegated to the bond and against the contractor. When the owner does not have the repairs or improvements made, but same is done by the lessee, with or without the consent of the owner and under a contract between the lessor and lessee wherein it is provided that the lessee shall pay for all repairs and improvements, the lessee alone is liable for the materials furnished and labor performed, and the lien therefore attaches only to the interest the lessee has in the property derived from his lease contract. The lessee may protect himself from personal liability by recording a contract and bond, and in the same manner as the owner could. In section 11 it is provided that when the work is done by the lessee, as above stated, "* * * then he shall be subject to all the obligations that are made incumbent on the owner by this act, and the liens and privileges created and established by this act shall operate upon whatever right said person having the work done or doing the work may have to the use of the land as lessee; and said lien and privilege shall operate against the lease such person holds."

It is clear to our minds that under this section of the act the property of the owner can never be subject to a lien for material and labor where the work in which the material and labor were used was done by the lessee himself, or by a contract he awarded, unless it is first shown that the lessee in doing the work was acting as an agent, representative, or contractor of the owner. Mere consent or acquiescence on the part of the owner is insufficient. We think this is clearly shown by the subsequent part of section 11, which is, "* * * or if said work is caused to be erected by a mineral lessee, then the privilege shall exist against the mineral lease and whatever rights the lessee may have therein, thereon or thereto." It is common knowledge that a mineral lease is granted by the lessor with the hope and expectation and with the written consent to the lessee to enter on the property, erect derricks, tool houses, and all other necessary things to drill for and produce oil. The materialmen who furnish the labor or steel for the derrick and the carpenters who erect it have a lien against the thing erected and the right of the lessee in the lease. They have no lien against the land owned by the lessor. It is clear therefore that knowledge and consent given to an improvement made by the lessee is not sufficient to bind the lessor personally or to make his property subject to the lien arising from said improvements. In the case of Price v. Lee, 11 La.App. 291, 123 So. 458, 460, in passing upon a like case, this court said:

"In the first position, which, as stated, is based upon the contention that Lee was equally interested with Atkinson in having the premises cleaned, if it be conceded that Lee was interested and therefore should have borne a part of the expense of having the premises cleaned, the evidence established, however, that Atkinson agreed to bear the entire expense, and certainly as

between Lee and Atkinson the agreement controls, and the workmen employed by Atkinson, in seeking to collect the wages due them by Atkinson must be controlled by the agreement, unless it can be said that Lee and Atkinson were without power to contract or agree that the expense of the work of cleaning the premises should be borne exclusively by one or the other.

"It is not suggested that there is any law which prohibited the agreement that the expense of cleaning the premises should be borne by Atkinson, and, aside from the fact that the evidence established that plaintiff and his assignors did not deal with Atkinson as the agent of Lee, plaintiff, in attempting to collect an indebtedness due by Atkinson from Lee, is bound by the agreement between Atkinson and Lee, and under that agreement, which was in all respects legal, Atkinson being alone bound for the indebtedness, plaintiff cannot ignore the agreement and proceed against Lee as the principal of Atkinson.

"In the second position, which is apparently based upon the contention that the evidence established that Lee had knowledge of the character and nature of the work (that is, repair and reconstruction of the plant) being done by Atkinson, it is apparently assumed that under such circumstances Lee became liable for the wages of the workmen employed by Atkinson under the building statute, Act No. 298 of 1926, but, as appellant does not direct our attention to the particular provision of the statute from which such result would follow, we assume it is claimed that, as to the work of the character and nature of improvements, of which Lee may have had knowledge, Atkinson, as to such work, should be held to have been the agent or representative of Lee.

"Certainly, if Atkinson was the agent of Lee as to such work, Lee would be bound for the wages of the workmen employed by Atkinson, without reference to the building statute, but it is not suggested that mere knowledge on the part of Lee that Atkinson was having work done of the character or nature of improvements would, under the general law, be sufficient to constitute Atkinson as the agent of Lee, and there is not any express declaration in the building statute that the owner of immovable property, who merely has knowledge that the property is being improved, becomes the principal of the person having the work done. The statute must be strictly con-

strued, and we do not think that under such construction it can be said, even though it should be conceded that Lee knew Atkinson was having work done of the character or nature of improvements, that, under the provisions of the statute, Atkinson became the agent of Lee and that Lee became liable for the wages of the workmen employed by Atkinson."

And we are convinced that the finding in that case is the correct rule. Section 11 of the act does not materially change the law existing at the time of its passage, as is laid down in article 3249 of the Revised Civil Code, which defines creditors who have a privilege on immovables. Subdivision 3 of that article is as follows:

"Those who have supplied the owner or other person employed by the owner, his agent or subcontractor, with materials of any kind for the construction or repair of an edifice or other work, when such materials have been used in the erection or repair of such houses or other works.

"The above named parties shall have a lien and privilege upon the building, improvement or other work erected, and upon the lot of ground not exceeding one acre, upon which the building, improvement or other work shall be erected; provided, that such lot of ground belongs to the person having such building, improvement or other work erected.; and if such building, improvement or other work is caused to be erected by a lessee of the lot of ground, in that case the privilege shall exist only against the lease and shall not affect the owner."

This article has been interpreted in the like cases of Hearne v. Victoria Lumber Company, 131 La. 646, 60 So. 22, and Carroll Lumber Company v. Davis, 133 La. 416, 63 So. 93, and is in accord with the interpretation we place upon section 11 of the Act under consideration.

The confusion in the minds of some as to the correct construction to be placed on section 11 of the act arises no doubt from statements made in numerous opinions of the different courts of this state to the effect that the lessor, not having knowledge of the work being done, therefore did not consent. We are sure these statements were made in relating the facts of each case and for the purpose of clearly showing that the lessee could not have been acting as an agent or representative of the lessor. If such statements were made by the appellate courts as the sole basis for a decision,

they are erroneous. Further confusion has been caused by the decision of the Orleans Circuit in the case of Madison Lumber Company v. Rossi, 18 La.App. 461, 137 So. 221, 222, wherein the court said:

"Section 1 creates a lien and privilege in favor of the materialman on the land and improvements when the owner consents to, or requests or authorizes, the improvements.

"In section 11 the Legislature contemplated a situation where the improvements were created on the owner's property without his consent or authorization by some one having a right of occupancy of the property. It is to be noted that the lien of the materialman in such cases is confined to such right as the unauthorized party had in the property, but does not affect the property itself. Jackson Homestead Ass'n v. Zimmer, 16 La.App. 647, 134 So. 126.

"Apparently the Legislature considered it would be unreasonable and unfair to give a lien and privilege in favor of the materialman on the property of the owner when a tenant, without the owner's consent, authorization, or knowledge, placed improvements on the leased or rented property. Since the record shows that Dr. Campagna was not a lessee or in possession of the property under any right of occupancy, section 11 is inapplicable."

This statement of the court was unnecessary to a decision of the case, is purely obiter, and in no manner controlling. It amounts to writing into section 11 of the act a meaning not disclosed by the wording of that section. It amounts to a most liberal construction of the section in favor of the lien claimants, when the correct rule to follow in construing a lien act is to the contrary.

The lease contract between the lessor and lessee herein has been terminated. The rights of the lessee under said lease have been sold under a judgment of the court in favor of the lessor and against lessee for rents due under said contract; and all of lessee's rights under said contract of lease have become those of lessor by reason of the purchase at sheriff's sale and the contract of lease itself, which provides for such at the termination of the lease. It therefore follows that whatever rights or liens plaintiffs have against the lessees are relegated to the proceeds of the sale of the lease. Section 11, Act No. 298 of 1926. There appears to be no controversy over this point in this court.

Plaintiffs contend that the written lease is both a lease and building contract, and that from the language of the lease, lessees are shown to be the agents, representatives, or contractors of the lessor. We fail to see any merit in plaintiffs' contention. The lease expressly declares that all repairs and alterations made in or on said building shall be at the expense of lessees. Lessor, being of sound mind, realized that alterations were necessary to change a store building into a theatre. While the lessees had a lease on the building and lot, they were still lessor's property, and the contract provided that at the termination of the lease the building at the option of the lessor was to be returned as it stood at that time. Under the contract, if any insurance was to be carried on the building, it was up to lessor to carry it. This she could not secure unless the alterations were made in accordance with the rules and regulations of the National Board of Fire Underwriters; therefore, the condition requiring the alterations to comply with such rules and regulations. Furthermore, she cannot be penalized for demanding that her building be not made a fire hazard. She was within her rights also in wanting to know just what changes lessees intended to make; therefore the clause demanding that she see the plans and specifications before the alterations were made and that her approval be given. In this respect, she was also clearly within her rights as a lessor and, by making such requirements, she did not become a builder.

The contract also required that the lessees give bond against failure to pay for materials and labor and against the filing of liens against lessor's property or the lease. The interior of the building was being entirely changed. After the alterations were completed, it could be used for nothing except a theater. If lessees failed to pay for the labor and materials, it is fair to presume the liens would have been filed. Lessees' equipment, as well as the lease, would be subject to sale to satisfy lien claimants. Such a result could have seriously affected the chance of lessor to recover her rents due under said contract and would possibly have left her with a building not easy to rent. She was vitally interested in the lessees not being disturbed in their business. A bond with good

security would have prevented such an occurrence. Furthermore, at the time of entering into the lease contract, there existed some confusion as to the liability of lessor who consented to the improvements, as is demonstrated by the present suit. The confusion in the minds of some was justifiable, due to the statements of the courts made in certain cases, as we have above shown. Under the circumstances, the requirement of a bond was the natural and safe thing to do.

The record discloses that plaintiffs did not act on the provisions of the lease contract in furnishing materials and labor; in fact, they did not know the contents of said contract and made no inquiry. There is nothing contained in the lease contract which prevents the application of section 11 of Act No. 298 of 1926 to the facts of this case, and we are convinced said section governs, and plaintiffs are not entitled to a lien or privilege against the property of the owner, Mrs. Goldstein; and neither are they entitled to a personal judgment against her.

The judgment of the lower court is correct and is affirmed, with costs.