76 So.2d 537

Wade O. MARTIN, Jr., Secretary of State,

v.

GENERAL AMERICAN CASUALTY COMPANY et al.

No. 41960.

Nov. 8, 1954.

Rehearing Denied Dec. 13, 1954.

---

C. C. Wood, Baton Rouge, for relator.

Kantrow, Spaht & West, Baton Rouge, for respondents Marguerite Boudreaux and Ruth Papizan.

Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, for respondent Travelers Fire Ins. Co.

MOISE, Justice.

Writs were granted with a stay order, issued under the supervisory jurisdiction of the Supreme Court, directed to the Nineteenth Judicial District Court for the Parish of East Baton Rouge, to review a judgment of that court denying a preliminary injunction applied for by the Secretary of the State of Louisiana seeking to enjoin further proceedings to satisfy the execution of a judgment which was the outgrowth of an automobile accident on June 27, 1953, in which the respondents, Marguerite Boudreaux and Ruth Papizan, filed a suit in the Eighteenth Judicial District Court for the Parish of West Baton Rouge, making as a party-defendant the General American Casualty Company of San Antonio, Texas, the insurer of the vehicle which collided with the Boudreaux automobile. Ruth Papizan was a passenger in the Boudreaux automobile. All parties of interest filed an answer. A petition of intervention was filed on behalf of The Travelers Fire Insurance Company, as subrogee on a collision policy issued to Marguerite Boudreaux insuring her automobile.

After due proceedings had judgment was rendered in favor of the respondents. Writs of Fieri Facias were obtained from the Clerk of Court of West Baton Rouge Parish, directed to the Sheriff of the Parish of East Baton Rouge, Louisiana, commanding him to seize and take into his possession the property, rights and credits of the General American Casualty Company, and respondents also instituted garnishment proceedings and named A. P. Tugwell, Treasurer of the State of Louisiana, as garnishee. Thereafter, the garnishee filed his answer, admitting that certain United States Treasury Bonds belonging to the General American Casualty Company were on deposit with him, and that no prior liens or attachments had been levied against this property. The judgment recognized the

seizure of the bonds and also the first lien on the property. The sheriff then took into his possession the bonds described in the answer filed by the garnishee.

The General American Casualty Company was placed in receivership in its domiciliary State of Texas. When knowledge of this fact was obtained the Secretary for the State of Louisiana filed a petition in the court, recognizing respondents' prior valid seizure and alleging that after respondents had been satisfied there would be sufficient funds left for an ancillary receivership in this State. The Secretary of State prayed for and was appointed ancillary receiver.

Thereafter, the Secretary of State filed a supplemental and amended petition, by which a Rule Nisi issued to the respondents, including the Sheriff for the Parish of East Baton Rouge, ordering them to show cause why any further action should not be enjoined.

The facts are that *respondents' seizure was recognized as effected on June 7, 1954,* and *the General American Casualty Company of Texas was placed in the hands of receivership in that State on June 17, 1954.* Thus, the seizure was perfected ten days before the receivership proceeding was filed in Texas.

The Secretary of State made the admission—

(a) That Texas is not a reciprocal state within the meaning of the Uniform Insurers Liquidation Act.

(b) That respondents were in good faith.

After submission of the case on the merits, the Court held that—

"The Uniform Insurers Liquidation Act and Section 762 of Title 22 of Louisiana Revised Statutes of 1950 does not apply *if the domiciliary state of the insurer is not a reciprocal state within the contemplation of the act.*"

and, accordingly, dismissed the restraining order obtained by the Secretary of State.

The parties litigant have agreed on the legal question involved, because in his brief the Secretary of State holds:

"It is submitted that the only question involved in the case is whether, under the above quoted Section 762, relator is entitled to the relief prayed for, and we do not understand that the trial judge or opposing counsel seriously urge that there is any other question presented."

The General American Casualty Company was not authorized to do business in Louisiana since 1953, but its funds were held because such were in the nature of a guarantee as a protection of claimants on policies written in this State. The deposit with the Secretary of State was bonds and securities to the extent of $20,000. The condition of the deposit, as set forth in LSA–R.S. 22:1022, is as follows:

"The above deposit shall be conditioned for the prompt payment of all

claims arising and accruing to any person by virtue of any policy issued by any such insurer upon the life or person of any citizen of the State of Louisiana, or upon any property or other risk situated in this state."

Relator argues that "whether Texas is a reciprocal state, within the meaning of the aforementioned Section 762, is a matter of no importance and that the Section is applicable in Louisiana under the facts involved in this cause, without regard to whether Texas has a similar provision."

Our concept is that the uniformity of interpretation is in law "a consummation devoutly to be wished for".

"§ 763. Uniformity of interpretation

"This Uniform Insurers Liquidation Law (R.S. 22:757 through 22:763) shall be so interpreted and construed as to effectuate its general purpose *to make uniform the law of those states that enact it.*" (Emphasis ours.)

The Trial Judge clearly understood the situation, for in his reasons for judgment dictated in court he said:

"The seizure was effected prior to the date when the company was placed in receivership in the State of Texas. Subsequent to such proceedings in Texas, the Secretary of State of Louisiana instituted these proceedings seeking to enjoin the sale of the bonds under the writ of fieri facias and also seeking to have an ancillary receivership."

■ Furthermore, the law is uniform in this State, and it has been for many years, that a seizure by a fieri facias prior to the appointment of a receiver gives the seizing creditor a valid lien. Thus, Section 762 referred to is in derogation of rights which have heretofore existed in this State, and which law has been well established in the jurisprudence.

■ In the very early case of Receivership of Bryce Cash Store, 12 La.App. 365, 124 So. 544, 545, the following pertinent rule was made:

"Code of Practice, art. 722, provides that the creditor, 'by the mere act of seizure, is invested with a privilege * * * which entitles him to a preference over other creditors, unless the debtor has become bankrupt previous to the seizure.' It is conceded that there was in this case an act of seizure, which was declared by the court to be valid and was sustained. The Baker Grocery Company was, therefore, entitled to a preference over the other less diligent creditors. The property of the debtor was attached before the receiver was appointed, and the privilege, when recognized by the court, dated back to the service of the writ. Now, *was this seizure and the privilege conferred by it divested when the receiver was ap-*

*pointed and took over the property?* The answer is, 'No.'

"A receiver is but an officer of the court, who acts as trustee for both the creditors and the debtor corporation. He acts, not for himself, but for both, and represents each. Property in his hands is in the custody of the law. He is but an agent, through whom the court acts. * * *

"The appointment of a receiver sustains the status quo of the corporation, and is meant to preserve and not to cause injury either to the creditors or to the corporation. State [ex rel. Gaiser] v. King, 46 La.Ann. 110, 14 So. 902. His taking over of the property brings about no change of title and cannot prejudice the rights of any creditor. He takes the property as he finds it, *burdened with all the liens and privileges which affected it in the hands of the corporation, and to the same extent.* He stands in the shoes of the corporation. The order appointing the receiver in this case specifically directed him to take charge of all the assets of the corporation, and to hold or administer the same 'in such manner as he may be directed by this court and subject to the further orders of this court.' The property was, at the time the receiver was appointed, in the custody of the sheriff, who had taken possession of it under the writ of attachment. Presumably he surrendered the property to the receiver. But such surrender did not 'destroy the privilege resulting from the seizure.' Cleveland Steel Company v. Joe Kaufman Co., 155 La. 529, 99 So. 428, 429; Item Co., Ltd., v. Nu-Grape Bottling Co., Inc., 160 La. 975, 107 So. 770; Item Co., Ltd. v. Nu-Grape Bottling Co., Inc., 160 La. 631, 107 So. 471." (Italics ours.)

In the case of Duval v. T. P. Ranch Co., 151 La. 142, 91 So. 656, 658, this Court held:

"It is well settled that a receiver *cannot enjoin the execution of a judgment wherein the seizure occurred prior to his appointment in the absence of allegations of fraud or special interest in the property seized."* (Italics ours.)

This holding was followed in the cases of Item Co., Ltd. v. Nu-Grape Bottling Co., Inc., 160 La. 631, 107 So. 471; Id., 160 La. 975, 107 So. 770. See also Owens v. Allied Underwriters, 207 La. 437, 21 So.2d 490.

The case of Hankins v. Sallard, La.App., 188 So. 411, 413, held:

"*If the seizure of the funds in the hands of the State Treasurer had been made before the receiver was appointed* the seizing creditor would have acquired a privilege on the funds so seized and the receiver could not have secured possession of the seized funds to the prejudice of the seizing creditor. * * *" (Italics ours.)

The District Judge concludes that:

"In view of the language of Section 762, it is my opinion that this section comes into play only in cases or instances *dealing with reciprocal states.*" (Italics ours.)

We share the opinion so well expressed by our Learned Brother of the District Court, because it is our firm conviction that, by both precedent and authority, a creditor by a mere act of seizure is invested with the privilege on the property seized which entitles him to a preference over other creditors, unless the debtor becomes a bankrupt prior to the seizure. Campbell v. His Creditors, 1842, 3 Rob. 106; Kimber-Murphy Manufacturing Co., Inc., v. Vestal, Inc., La.App., 2 Cir., 1949, 43 So.2d 508. From the standpoint of fundamental right, "a receiver cannot enjoin the execution of a judgment wherein the seizure occurred prior to his appointment *in the absence of allegations of fraud or special interest in the property seized.*" (Italics ours.)   Duval v. T. P. Ranch Co., 151 La. 142, 91 So. 656.

In order to maintain with the Uniform Insurers Liquidation Laws of these United States, such uniformity is only applicable when the domiciliary state of the insurer *is a reciprocal state within the contemplation of the law;* and, therefore, when we come to the interpretation of statutes such as we have in this case, in derogation of certain vested rights in the citizen prior to a receivership, shown supra (even when a law is an exception to a general rule), it must be strictly construed. Succession of Longley, 1 Orleans App. 231; Ketteringham v. Eureka Homestead Soc., 140 La. 176, 72 So. 916; King v. Wm. J. Burns International Detective Agency, 151 La. 211, 91 So. 681; Shreveport Armature & Electric Works v. Harwell, La.App., 172 So. 463; Bradley v. Burgis, La.App., 25 So.2d 753.

Section 762 of Title 22 of the Louisiana Statutes Annotated–Revised Statutes of 1950 reads as follows:

"During the pendency of delinquency proceedings in this or *any reciprocal* state no action or proceeding in the nature of an attachment, garnishment, or execution shall be commenced or maintained in the courts of this state against the delinquent insurer or its assets. Any lien obtained by any such action or proceeding within four months prior to the commencement of any such delinquency proceeding or at any time thereafter shall be void as against any rights arising in such delinquency proceeding." (Italics ours.)

If this section stood alone, or if there were not other conflicting provisions in the insurance code, it might be contended that the legislature intended by its enactment to erase and wipe out the long established jurisprudence and statutory law hereinabove set forth.

█ With due respect to the contentions of the learned Advocate of the State, we believe that Section 762 applies *only when the domiciliary state (in this case Texas) and the ancillary state (in this case Louisiana) are reciprocal states, as defined in Section 757 of Title 22 of the Louisiana Statutes Annotated–Revised Statutes of 1950*. LSA–R.S. 22:756(D); Ace Grain Co. v. Rhode Island Insurance Co., D.C., 107 F.Supp. 80; Id., 2 Cir., 199 F.2d 758; 9A Uniform Laws Annotated, 148 and 150. Such, we believe, is clearly shown by the specific language of Section 756(D), Title 22, LSA–R.S., which provides as follows:

"The rights, powers and duties of the Secretary of State as such conservator, with reference to the assets of a foreign or alien insurer shall be ancillary to the rights, powers and duties imposed upon any receiver or other person, if any, in charge of the property, business and affairs of such insurer in its domiciliary sovereignty. *When such domiciliary sovereignty is also a 'reciprocal state' as defined in R.S. 22:757, the Secretary of State, as ancillary receiver in this state, shall be subject to the provisions of the Uniform Insurers Liquidation Law (R.S. 22:757 through 22:763) herein.*" (Emphasis supplied.)

What, then, is a reciprocal state? A reciprocal state is defined in Section 757 as follows:

"(7) 'Reciprocal State' means any state other than this state in which in substance and effect the provisions of this law are in force, including the provisions requiring that the insurance commissioner or equivalent insurance supervisory official be the receiver of a delinquent insurer."

Since Texas is admittedly not a reciprocal state, *the provisions of the insurance code dealing with the Uniform Insurance Liquidation Law, LSA–R.S. 22:757–22:763, cannot be applicable*. A reading of this insurance code reflects that Sections 731–755 deal with and exclusively govern liquidation of domestic insurers; Section 756 sets forth the grounds for conserving the assets of foreign or alien insurers, and further provides the rights, powers and duties of the conservator; Sections 757 through 763, which include the controversial Section 762 quoted above, is the Uniform Insurers Liquidation Law, and the remaining Section 764 deals with voluntary dissolutions.

The first paragraph of Section 756 provides specifically the grounds for liquidating an alien insurer, names the liquidator, and enumerates the rights, powers and duties of the same, but in the last paragraph thereof attaches the contingency to the effect that, "When such domiciliary sovereignty is also a 'reciprocal state' as defined in R.S. 22:757, the Secretary of State, as ancillary receiver in this state, shall be subject to the provisions of the Uniform In-

surers Liquidation Law (R.S. 22:757 through 22:763) herein." This is a splendid affirmative of the position taken by the Trial Judge, and now by us, because the law is clear that *the Legislature intended for the ancillary receiver to follow the provisions of the Uniform Act only when the domiciliary sovereignty is a reciprocal state.*

 There can be no other reasonable conclusion under this provision, because in all five sections of the Uniform Insurance Liquidation Act, as adopted by the State of Louisiana, we find repeated use of the phrase "reciprocal state". The entire Act must be construed by the Court to make it harmonize as a whole. This is a universal rule that does not need the citation of authorities, and furthermore is this made manifest by reference to our Article of the Code of Practice 722, which reads:

"The creditor, by the mere act of seizure, is invested with a privilege on the movable and immovable property thus seized, which entitles him to a preference over other creditors, unless the debtor has become bankrupt *previous* to the seizure."

In the instant matter the respondents have complied with the articles of our Code of Practice, and we find that they are entitled to satisfaction of their claims out of the funds seized by the Sheriff of East Baton Rouge.

Therefore, the writs herein issued are recalled; the judgment of the lower court, recognizing the lien and denying a preliminary injunction and recalling the restraining order issued against Marguerite Boudreaux, Ruth Papizan, and Honorable Bryan C. Clemmons, Sheriff of the Parish of East Baton Rouge, is affirmed; and it is further ordered that the rule taken by the ancillary receiver, Wade O. Martin, Jr., Secretary of the State of Louisiana and Ex-Officio Insurance Commissioner of the State of Louisiana, be dismissed.

Judgment affirmed.

HAMITER, J., concurs in the decree.