**LEWIS, ROCA, SCOVILLE & BEAU-CHAMP, a partnership, Appellant,**

v.

**INLAND EMPIRE INSURANCE COMPANY, Appellee.**

No. 5835.

United States Court of Appeals
Tenth Circuit.

Aug. 11, 1958.

John P. Frank, Phoenix, Ariz. (J. Richard Duffield and Lewis, Roca, Scoville & Beauchamp, Phoenix, Ariz., on the brief), for appellant.

Calvin L. Rampton, Salt Lake City, Utah (David K. Watkiss, Salt Lake City, Utah, on the brief), for appellee.

Before BRATTON, Chief Judge, and MURRAH and BREITENSTEIN, Circuit Judges

BREITENSTEIN, Circuit Judge.

To collect an Arizona judgment against an Idaho insurance company attachment proceedings were brought in Kentucky. Thereafter the attached property passed into possession of the receiver for the insurance company appointed by the United States District Court for the District of Utah. The judgment creditor, appellant here, filed its proof of preferred claim in the Utah receivership proceedings. The basis for the judgment was a debt due appellant from the insurance company for legal services rendered to that company. With the commendable purpose of eliminating unnecessary litigation, the parties stipulated that the Utah court should determine their respective rights. That court allowed the claim as a general claim but held that it was entitled to no preference because of the Kentucky attachment. The sole issue presented by this appeal is the validity of the Kentucky attachment.

This case is another episode in the litigation involving the Inland Empire Insurance Company. We are not confronted with any problem of interference by a federal court with an attachment by a state court. By their stipulation the parties have waived their rights to press their contentions in any court other than the United States District Court for the District of Utah, excepting only an appeal from the decision of that court. As the Kentucky attachment preceded the Utah receivership, the claim is entitled to preference if that attachment is valid.[1]

The receiver asserts that the attachment is invalid because it was not executed in accordance with applicable Kentucky statutes. KRS 425.225 provides that the sheriff shall execute an order of attachment upon personal property capable of manual delivery by taking it into his custody and holding it subject to order of the court and upon other personal property by delivering a copy of the order, with a notice specifying the property attached, to the person holding it. The property attached consisted of securities deposited with the Commissioner of Insurance in accordance with Kentucky law relating to the right of the company to do business in that state. The sheriff served the order of attachment and garnishment and the required notice on the Commissioner of Insurance but did not take the securities into his possession.

The receiver argues alternatively that the securities should have been taken into possession by the sheriff or that the order should have been served on the Custodian of Insurance Securities instead of on the Commissioner of Insurance.

The securities were not capable of manual delivery. They were kept in va-

---

1. See Continental Bank & Trust Company v. Apodaca, 10 Cir., 239 F.2d 295, a case involving this same receivership. There it was held that because the receivership proceeding had been brought in Utah before an action in New Mexico attempted to exercise control over assets of the insurance company, the Utah court had control over those assets. The court said that "the court first acquiring actual possession and control of the property thereby acquires exclusive jurisdiction." 239 F.2d 298.

rious banks and trust companies designated by the Commissioner of Insurance and could be removed therefrom only upon compliance with certain procedures.[2] The sheriff had no authority to seize them.

While it is true that the custodian received the deposited securities,[3] it is the commissioner who designates the banks to be used as depositories and who must approve orders allowing access to the deposits. The record does not disclose any answer by the commissioner to the garnishment but it does show that the Utah receiver brought an action in the United States District Court for the Eastern District of Kentucky against the commissioner to obtain possession of the insurance company's securities on deposit with him. By answer the commissioner asserted that the deposit should remain within his control. The court ordered the deposit turned over to the receiver and this order was obeyed. Thus it conclusively appears that the property was held by the commissioner within the purview of the Kentucky attachment statute. Otherwise the securities would not now be in the possession of the Utah receiver. The service of the attachment order was proper.

■ The Uniform Insurers Liquidation Act is in effect in Kentucky.[4] It is therein provided that:[5]

> "During the pendency of delinquency proceedings in this or any reciprocal state no action or proceeding in the nature of an attachment, garnishment, or execution shall be commenced or maintained in the courts of this state against the delinquent insurer or its assets. Any lien obtained by any such action or proceeding within four months prior to the commencement of any such delinquency proceeding or at any time thereafter shall be void as against

any rights arising in such delinquency proceeding."

At the time of the attachment, "rehabilitation proceedings" involving the insurance company were pending in an Idaho state court. The receiver urges that these "rehabilitation proceedings" are "delinquency proceedings" within the purview of the statute and hence the attachment was improper.

The statute does not apply unless Idaho is a "reciprocal state" within the meaning of the Kentucky law. KRS 304.960 provides:

> " 'Reciprocal state' means any state other than this state in which in substance and effect the provisions of KRS 304.960 to 304.968 are in force, including the provisions requiring that the Insurance Commissioner or equivalent insurance supervisory official be the receiver of a delinquent insurer."

Idaho has not adopted the Uniform Insurers Liquidation Act.[6] The 1951 Idaho "Insurance Code, Merger, Rehabilitation and Liquidation Act"[7] does not contain in substance and effect the provisions of KRS 304.960 to 304.968. Indeed there is nothing said in the Idaho law about reciprocity.

The receiver contends that Idaho is a reciprocal state because its law provides that its insurance commissioner shall be the receiver of a delinquent insurer. This is not enough. The wide differences between the Idaho and Kentucky statutes are obvious on a most casual reading. For example, KRS 304.966, quoted above, provides that during the pendency of delinquency proceedings in a reciprocal state no attachment, garnishment or execution proceedings shall be maintained in Kentucky against a delinquent insurer or its assets and that any lien obtained by such action is void as against any

---

2. KRS 304.489 and 304.501.

3. KRS 304.476, 304.484 and 304.485.

4. KRS 304.960 to 304.968.

5. KRS 304.966.

6. See Uniform Laws Annotated, Vol. 9B, p. 195. This volume was published in 1957.

7. 1951 Idaho Session Laws, Chap. 95, 1957 Cumulative Supplement to Idaho Code, § 41–3501 et seq.

rights arising in such delinquency proceedings. Section 19 of the Idaho act makes no reference to proceedings in another state and merely provides that a lien on the property of an insurer created within four months of a show cause order in connection with rehabilitation proceedings is voidable. As another example, section 10 of the Idaho act, dealing with delinquency proceedings against insurers domiciled in Idaho, is essentially the same as KRS 304.961 except that it omits the Kentucky clause dealing with ancillary proceedings in reciprocal states.[8]

As the Idaho statute does not contain in substance and effect the provisions of the Kentucky statute, Idaho is not a reciprocal state and the prohibitions contained in KRS 304.966 do not apply.

The receiver contends, and the trial court held, that the deposited securities were not subject to attachment by a general creditor. The status of the deposit and the remedies by which it may be reached depend upon the law of Kentucky.[9]

KRS 425.185 provides that in an action against a foreign corporation for the recovery of money, the plaintiff, at or after the commencement of the action, may attach and garnish. Such remedy was here invoked against securities deposited by the foreign insurance company with the Kentucky insurance commissioner as a prerequisite to the conduct of business in that state. KRS 304.476 provides that:

"All such deposits shall be held by the custodian in trust for the benefit and protection of all of the insurer's policyholders and creditors in the United States."

KRS 304.494 provides for the release of excess deposits. KRS 304.497 reads thus:

"(1) If a judgment has been recovered against an insurer having a deposit of assets under this code, upon a policy issued by such insurer, and an execution issued upon the judgment has been returned wholly or partly unsatisfied, any court of competent jurisdiction in this state shall, upon motion made by the plaintiff in the execution, and three days' notice to the insurer, order the commissioner and custodian to deliver into court an amount of the assets on deposit sufficient to satisfy the judgment in full, or so much thereof as such assets will suffice. Obeyance of such order shall release this state and the commissioner and custodian from all liability as to assets so delivered.

"(2) Assets so delivered into court shall be collected or disposed of for the benefit of the plaintiff as provided by law in respect to notes or securities delivered into court by a garnishee."

KRS 304.499 states:

"(1) Any such required deposit shall be released, in addition to circumstances already provided for, in these instances only:

"(a) Upon extinguishment of substantially all liabilities of the insurer for the security of which the deposit is held, by reinsurance contract or otherwise.

"(b) If such deposit is no longer required under this code.

"(c) If the deposit was made pursuant to the retaliatory provision,

---

8. The omitted clause reads:
  " * * * ancillary receivers in reciprocal states shall have, as to assets located in their respective states, the rights and powers which are prescribed in KRS 304.961 to 304.968 for ancillary receivers appointed in this state as to assets located in this state."

9. Continental Bank & Trust Company v. Apodaca, supra; Continental Bank &

Trust Company v. Gold, D.C., 140 F. Supp. 252, 255; 44 C.J.S. Insurance § 81(d), p. 576. Cf. United States v. Knott, 298 U.S. 544, 549, 56 S.Ct. 902, 905, 80 L.Ed. 1321, wherein it is said: "The deposit of the securities rendered them subject to process within the State; * * *."

K.R.S. 304.110, it shall be released in whole or in part when no longer so required.

"(d) Upon proper order of a court of competent jurisdiction the deposit shall be released to the receiver, conservator, rehabilitator, or liquidator of the insurer.

"(2) No such release shall be made except on application to and written order of the commissioner made upon proof satisfactory to him of the existence of one of· such grounds therefor. The custodian shall release the deposit upon such order of the commissioner. The commissioner shall not have any personal liability for any such release of any deposit or part thereof so ordered by him in good faith.

"(3) All releases of deposits or any part thereof shall be made to the person then entitled thereto upon proof of right satisfactory to the commissioner."

KRS 304.501 covers access to and removal of deposits. KRS 304.504 relates to· the release of excess deposits existing on the effective date of the act.

The receiver contends that resort to the deposit can be had only through 304.-497 or 304.499, supra. Obviously, the appellant cannot qualify under 304.497 because its claim is not based on an insurance policy issued by Inland. It is equally obvious that the appellant cannot take advantage of 304.499 because the conditions there stated cannot be satisfied by a general creditor.

The receiver bases his position on the language in the first subsection of 304.-499 that the deposit "shall be released, in addition to circumstances already provided for," only in accordance with the provisions of that section which follow. This interpretation of the statute means that the deposit is available only to the insurer, to some one standing in its place and to its policyholders, and hence the

provision of 304.476 that the deposit is for the benefit of all policyholders and creditors in the United States would be nullified so far as creditors are concerned unless receivership or like proceedings are first successfully maintained.

We do not agree with the receiver. The phrase "circumstances already provided for" as it appears in 304.499 refers not to 304.497 but to 304.494 which relates to the release of excess deposits. The word "release" is used in 304.494, 304.499 and 304.504. As used, it clearly refers to the return of deposited securities to the depositor or some one standing in its stead and not to the availability of the deposit to satisfy the claim of a policyholder or a creditor.

Our attention is called to no Kentucky decision which determines this point. Other than as noted above, no Kentucky statute is claimed to invalidate the attachment. We have then a situation in which Kentucky law requires the deposit "for the benefit and protection of all of the insurer's policyholders and creditors in the United States," provides for the levy of an execution against the deposit by a policyholder who has obtained a judgment, and permits the release of the deposit to the insurer or some one standing in its place. The statute does not forbid the attachment of the deposit by a policyholder or a creditor.[10] While 304.497 deals with execution, the differences between execution and attachment are too well known to require comment. If the legislature ·had intended to protect the deposit from attachment, it could easily have done so by an express provision.

KRS 304.966 prohibits, during the pendency of delinquency proceedings in a reciprocal state, any attachment, garnishment or execution against "the delinquent insurer or its assets." By implication this is a recognition of the right to attach assets of an insurer when the stated conditions do not exist. The re-

10. Unless forbidden by applicable state law, attachment is an accepted remedy to reach such deposits. See Appleman, Insurance Law and Practice, Vol. 19, § 11099, pp. 734–735, and cases there cited.

ceiver suggests that the deposited securities were not the property of Inland "in the ordinary sense of the word" because they were held in trust for policyholders and creditors. The fact that the securities were held in trust does not mean that the insurance company had no interest in them. In Continental Bank & Trust Company v. Apodaca, supra, a case involving the Inland receivership, this court held that a similar deposit made in New Mexico was an asset of Inland, "albeit subject to the laws of the State of New Mexico for the purposes for which it was deposited." [11] As to this point the situation is no different here. The deposit was an asset subject to the laws of Kentucky pursuant to which it was made.

■ Finally the receiver argues that it would be inequitable and against public policy to allow the deposit to be exhausted by the first creditor to reach it. In support of this position he points to KRS 304.497 setting up the procedure under which a policyholder may reach the deposit by execution and says that to adopt appellant's position would permit general creditors to take advantage of the deposit without going through the procedure required of policyholders. That section deals with execution, not attachment. So far as the Kentucky statute goes, the remedy of attachment at the beginning of suit is available to any creditor be he policyholder creditor or otherwise.

■ Courts cannot supply omissions in a statute.[12] If Kentucky had prohibited the attachment of the deposit or if Idaho had adopted the Uniform Insurers Liquidation Act, the appellant could not prevail.[13] It is not at all clear that it is against the public policy of Kentucky to allow a race to the assets. Specific permission for just such a race is given policyholder judgment creditors by KRS 304.497, albeit certain procedures are prescribed.[14]

In the final analysis, Kentucky required the deposit for the benefit of all policyholders and creditors in the United States. It did not take away from them the remedy of attachment. Under the circumstances, the attachment was valid.

The judgment is reversed with instructions to allow the claim of the appellant as a preferred claim.

---

11. 239 F.2d 297.

12. Bedinger v. Graybill's Executor & Trustee, Ky., 302 S.W.2d 594, 599; Meyers v. Walter, Ky., 253 S.W.2d 595, 598; 82 C.J.S. Statutes § 328, p. 635.

13. Among the reasons stated in Uniform Laws Annotated, supra, for the adoption of the Uniform Insurers Liquidation Act is the prevention of situations such as that here presented.

14. For cases allowing a race to the deposited assets, see Martin v. General American Casualty Company, 226 La. 481, 76 So.2d 537, 46 A.L.R.2d 1178; Murphy v. Second Russian Ins. Co., 240 N.Y. 554, 148 N.E. 702; Board of Public Instruction of Dade County v. Knott, 106 Fla. 869, 143 So. 735.