In the Matter of the Application of the People of the State of New York by Jesse S. Phillips, as Superintendent of Insurance, for an Order to Take Possession of the Property and Liquidate the Business of the Casualty Company of America.

Francis R. Stoddard, Superintendent of Insurance of the State of New York, Appellant; Claim of John W. Mackey, Guardian of Roy and Cleo Weidner (Compensation Claim No. 15632-NC), Respondent.

First Department, July 6, 1923.

Insurance — liquidation of New York insurance company — compensation claim awarded in Texas against New York insurance company doing business there — courts of Texas appointed receiver of company — deposit was made in Texas as condition to doing business there — courts of Texas directed that deposit be used to pay Texas claims prior to claimant's — New York Superintendent of Insurance not entitled to Texas deposit — deposit was trust fund which courts of Texas had right to apply to Texas claims — compensation claim should not have been rejected.

In proceedings to liquidate a New York insurance company, it appeared that the company had done business in the State of Texas and as a condition precedent to doing business there it had deposited with the Treasurer of that State securities of the value of $50,000; that the claimant herein was awarded compensation by the Industrial Accident Board of the State of Texas under the Workmen's Compensation Law of that State; that a receiver of the company was appointed in Texas and directed by the courts of that State to dispose of the securities and apply them to the payment of Texas claims in the order of priority specified by the Texas courts; that the money realized from the securities was so applied, and as a result the claimant's claim which was not first in priority was not paid and is presented for payment in this proceeding.

*Held*, that the deposit made by the insurance company in Texas constituted a trust fund for the benefit of Texas creditors and the courts of that State properly decided that that fund should be used in the payment of Texas creditors and should not be turned over to the liquidator of the company in this State.

Therefore, the claimant is not barred from presenting his claim in the liquidation proceeding in this State.

The award by the Industrial Accident Board of Texas under the Workmen's Compensation Law of that State is entitled to full faith and credit here and the validity of the claimant's claim cannot be questioned in this State.

Appeal by Francis R. Stoddard, as Superintendent of Insurance of the State of New York, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 26th day of July, 1922, upon the report of a referee confirming said report upon motion of

the claimant, allowing the claim of John W. Mackey, guardian of Roy and Cleo Weidner, citizens of the State of Texas, as a compensation claim against the estate of the Casualty Company of America and directing that dividends be paid thereon, and denying said superintendent's motion as liquidator to dismiss and disallow said claim.

*Clarence C. Fowler* of counsel [*Charles P. Robinson* and *Torrey A. Ball* with him on the brief], for the appellant.

*Watson, Harrington & Sheppard* [*Walter C. Sheppard* of counsel; *John M. Harrington* with him on the brief], for the respondent.

MARTIN, J.:

The Casualty Company of America was a New York corporation authorized to underwrite the kinds of insurance permitted by subdivisions 2, 3, 4, 5, 6, 7, 8 and 9 of section 70 of the Insurance Law of New York. In 1914 the company, as a condition prerequisite to acquiring permission to do business in the State of Texas, deposited with the Treasurer of that State securities of the value of $50,000. The deposit was made pursuant to a statute of the State of Texas then in force, and known as article 4930 of the Revised Statutes. (See Texas Revised Civil Statutes 1911, art. 4930; 3 Vernon's Sayles' Texas Civil Statutes 1914, art. 4930.) In 1915 the company surrendered its rights to do business in Texas, withdrew from the State and left the deposit in possession of the Treasurer, but failed to comply with the law of Texas requiring the filing of a bond for the protection of its outstanding contracts.

On May 4, 1917, the Superintendent of Insurance of the State of New York was directed by an order of the Supreme Court of New York forthwith to take possession of the property and liquidate the business of the company under and pursuant to section 63 of the Insurance Law of the State of New York.

The order provides in part as follows: " Ordered, that Jesse S. Phillips, and his successors in office, as Superintendent of Insurance be, and he hereby is, directed to take possession of the property and liquidate the business of the said Casualty Company of America, under and pursuant to Section 63 of the Insurance Law, and they are hereby vested with title to all of the property, contracts and rights of action of the said company, and directed to deal with the same in their own names as Superintendent of Insurance; and the said Casualty Company of America, its officers, agents and employees, and all other persons having any property or effects of the said corporation are hereby directed forthwith to assign, transfer and deliver to the said Superintendent of Insurance, all

the said property or effects in whosesoever name the same may be."

On May 4, 1917, and immediately upon the entry of the order of liquidation, the Superintendent of Insurance took possession of the business and affairs of the company, and forthwith gave formal notice of the making and entry of the order of liquidation, including a notice that claims should be filed with him on or before August 15, 1917, and a general demand that all assets and property should be immediately surrendered to him as liquidator, and that all claims against the company would be determined and the assets thereof would be distributed to its creditors, policyholders, stockholders and all other persons interested in its affairs, without further notice to persons failing to comply with the directions contained in the notice.

The parties herein conceded upon the record before the referee facts that may be summarized as follows:

The Charles Clarke Company of Texas was duly insured by the Casualty Company of America prior to and on September 10, 1915, according to the provisions of chapter 179 of the General Laws of the State of Texas, 1913,* being an act relating to employers' liability and providing for the compensation of certain employees and their representatives and beneficiaries, under a compensation policy covering personal injuries sustained by its employees in the course of their employment and for deaths resulting from such injuries.

Robert Weidner, deceased, met his death on September 10, 1915, by drowning, in the course of employment as a diver for the said Charles Clarke Company. By virtue of the aforesaid act the Industrial Accident Board of the State of Texas duly considered the claim of the beneficiaries of the said Robert Weidner, deceased, and duly ordered and adjudged that the said Casualty Company of America pay to the legal beneficiaries of Robert Weidner, deceased, fifteen dollars per week dating from September 10, 1915, and continuing thereafter for the full term of 360 weeks.

Thereafter, John W. Mackey was appointed guardian of Roy and Cleo Weidner, legal beneficiaries of said Robert Weidner, deceased. The Casualty Company of America began payments so awarded by the Industrial Accident Board of the State of Texas. There was accordingly paid to the said Mackey as guardian the sum of $15 per week for a period of 82 weeks, totaling $1,230. There were no further payments made after May 4, 1917, when the order of liquidation was entered. The duly verified claim of John W.

---

* Known as the Texas Employers' Liability Act or Workmen's Compensation Law. (See, also, 3 Vernon's Sayles' Tex. Civ. Stat. 1914, art. 5246h *et seq.*) — [REP.

Mackey as guardian was filed with the liquidator on July 27, 1917, for the sum of $4,170, the aggregate balance of said payments, figured at the rate of $15 per week for a period of 278 weeks with interest thereon from September 10, 1915.

In the report of the liquidator of the Casualty Company of America which was filed in the office of the clerk of the county of New York on the 11th day of July, 1921, it is asserted that the claims of Texas creditors were disallowed for the same reasons given for the disallowance of Ohio claims.

The disallowance of the claims of all of the Texas creditors is sought to be justified by the liquidator in his report on the ground that the courts of the State of Texas permitted the distribution by a receiver appointed in that State of the proceeds from the sale of certain bonds of the face value of $50,000, which were deposited with the Treasurer of the State of Texas as a condition precedent, as provided by the laws of Texas, for the transaction of a fidelity and surety bond business in that State. He asserts that by such distribution, citizens of the State of New York, and creditors generally were discriminated against, and citizens of Texas were preferred. In some instances their claims were paid in full.

The liquidator takes the position that he was entitled to the possession of the bonds so deposited in Texas. He claims that the deposit was a part of the general assets of the defunct company in Texas and that the Texas courts should have directed that the deposit be delivered to him in the domiciliary State.

After the Casualty Company of America had gone into liquidation the District Court of Walker county, Tex., appointed a receiver, one W. C. Jones, in an action entitled in that court, *Sarah Perue* v. *Casualty Company of America*, who was directed by the court to take possession of all the assets of the defunct company in the State of Texas, and to hold them subject to the court's further orders. The only assets which came into the hands of the receiver were the proceeds of the bonds which were on deposit, as alleged above, with the Treasurer of the State of Texas, and which were subsequently turned over to the receiver and sold by him.

In pursuance of an order of the District Court, Walker county, Tex., various creditors in the State of Texas, not including John W. Mackey as guardian of Roy and Cleo Weidner, intervened in said receivership proceeding and sought payment out of the funds impounded by the receiver. In the receiver's final report of distribution of assets it appears that the claims and demands of the intervening creditors were classified and ordered paid in the following order:

First Department, July, 1923.　　　　　　　　[Vol. 206

A. Surety and guaranty business done by said company in the State of Texas;

B. Accident and casualty business done by said company in the State of Texas;

C. General creditors of said company in the State of Texas.

The report in part is as follows:

" That the principal of all of said claims in Class 'A' have been paid with partial payment of interest.

" That none of the claims classified in Class ' B ' have been paid for the reason that after the payment of the claims classified in Class 'A' which were directed by this Court to be paid before any payments were· to be made in Class ' B ' have entirely exhausted all of the funds in the hands of this Receiver, ＊ ＊ ＊ leaving no funds with which to pay said claims."

The claim of Sarah Perue, the plaintiff in the receivership proceeding, was in class " B." It was similar to the Mackey claim herein. The creditors in that class did not receive payment of any part of their claims.

Authority for the action taken by the courts of Texas may be found in the case of *People* v. *Granite State Provident Association* (161 N. Y. 492). In that case the court, passing upon the questions there under review, held that the fund that was given as a deposit to do business was in the nature of a trust fund and that the State might apply it to purposes for which it was intended, while the general assets of the concern were not trust funds and must be delivered to the New Hampshire receiver to be distributed to all creditors, providing the New Hampshire receiver furnish a bond to secure an equitable distribution of the funds, so that the New York creditors would receive the same proportion of their claims as the creditors in New Hampshire and all other general creditors. The Texas courts have followed the New York Court of Appeals decision so far as they have proceeded. They have not distributed, and it does not appear that they have collected any of the general assets found in Texas; they have applied this trust fund only to the payments for which it was deposited.

The opinion of the Texas court governing this matter will be found in the case of *Phillips* v. *Perue* (111 Tex. 112; 229 S. W. Rep. 849) where it was said: " The questions certified are:

" 1. Whether the deposit with the State Treasurer constituted a trust fund to which the Texas creditors of the company had a claim superior to the right of Jesse S. Phillips, as liquidator of the company under the laws of the State of New York. ＊ ＊ ＊

" The decision of the first question depends entirely upon the effect of our statutes governing the deposit. It was fully within

the power of the State to prescribe the conditions on which the foreign corporation might pursue its business within its borders. It therefore had the right to require of the corporation, if deemed necessary, the special deposit as a trust fund for the protection of its obligations arising under its policies so issued within the State. *Pierce Oil Corporation* v. *Weinert, Secretary of State,* 106 Texas, 435; 167 S. W. Rep. 808; *Blake* v. *McClung,* 172 U. S. 239; 43 L. Ed. 432; 19 Sup. Ct. Rep. 165; *People* v. *Granite State Provident Association,* 161 N. Y. 492; 55 N. E. Rep. 1053; *Lewis* v. *American Savings & Loan Association,* 98 Wis. 203; 39 L. R. A. 559; 73 N. W. Rep. 793.

" This was a matter for the Legislature. There can be no question as to its power.

" Having the authority to require the deposit and to give it the character of a trust fund for the benefit of such special creditors, if the Legislature has so provided by law, neither the corporation, having availed itself of the benefits of the law, nor any one succeeding to its rights, can complain of an enforcement of the law. A law to which the corporation had voluntarily subjected itself would necessarily be binding upon its shareholders and other creditors and anyone standing in the stead of the corporation.

" Nor would an enforcement of the law violate the Federal Constitution as a refusal to give full faith and credit to the laws of another State purporting to vest title to the fund in the liquidator of the corporation in that State. The laws of this State are not subordinate to the laws of another State touching property lawfully within the jurisdiction of this State. It would be a novel proposition to say that valid laws of this State dealing with property here must yield to the laws of another State, which, of course, have no extra-territorial effect.

"Article 4930 provides that a foreign fidelity or guaranty corporation doing business in this State shall have on deposit not less than $100,000 in good securities with a State officer of one of the States of the United States, held by such officer for the benefit of ' the holders of its obligations,' and also that it shall have on deposit with the State Treasurer of this State not less than $50,000 in good securities, held for the benefit of ' the holders of the obligations ' of such company, to remain with him in trust to answer any default of the company as a surety upon any of its fidelity or surety bonds, etc., established by final judgment upon which execution may lawfully be issued against it.

" The deposit in controversy here was made in compliance with this article.

" Except for the stipulation that the deposit shall be answerable

only for judgments on which execution may lawfully issue in this State, which judgments would ordinarily be rendered only in favor of Texas creditors, there is nothing in this article expressly indicating that the deposit shall constitute a trust fund for the benefit primarily of such creditors.

" Other articles of the statutes in immediate context, however, make it reasonably clear that such was the intended purpose. Article 4935 declares the character of claims which may be satisfied by the State Treasurer out of the deposit. They are only those established by final judgment as a loss of the company ' incurred in this State.' Losses of the company ' incurred in this State ' could not well be other than those arising because of fidelity, guaranty or insurance obligations issued by it in this State in the pursuit of its business here. These would be its Texas obligations. If under the law only obligations of this character may be satisfied out of the fund, it is plain that the fund is primarily for their benefit.

"Article 4932 presents the conditions under which the deposit may be withdrawn upon the company's surrendering its right to do business in the State. One of them is that the company shall file with the State Treasurer a bond payable to the State in a sum ' equal to the whole amount of its liability in this State under its contracts, conditioned for the faithful performance and fulfillment of all its outstanding obligations.' Such a bond would inure only for the benefit of the company's Texas obligations. It could hardly have been intended that this substitute for the deposit could be availed of only for the satisfaction of such obligations, unless the deposit, itself, was primarily for their benefit."

That the law stated in the decision of the Texas court is in conformity with the law of the State of New York may be seen from an examination of the opinion in the case of *People* v. *Granite State Provident Association* (*supra*). Judge O'BRIEN writing the opinion for the court (at p. 496) said: " The fund in the hands of the domestic receiver, arising from the conversion of the special deposit in the Banking Department, stands upon a different ground. The defendant, in order to acquire the right to transact its business in this State, was obliged to make this deposit since the statute so provides. If this was a deposit as security merely for domestic creditors, we would be inclined to agree with the learned counsel for the defendant, who insists that this fund should be devoted to the benefit of all creditors equally wherever residing. But it is something more than a mere deposit as security. It is in the nature of a fund held in trust for the benefit of domestic creditors and shareholders of the defendant. The deposit was made in

obedience to section fourteen of the Banking Law, as a condition of the defendant's right to transact business here. By section thirty-three it is provided, in substance, that upon the appointment of the receiver of a corporation in this State, the Superintendent of the Banking Department shall pay over to him the funds remaining in his hands, less any charges that he may have against the same, and the receiver shall distribute these funds among the creditors and shareholders of the corporation residing in this State in the manner prescribed by law for the payment of creditors in the case of voluntary dissolution of a corporation. It is apparent from the provisions of these two sections, that the securities so deposited were held by the Superintendent as a trustee for domestic creditors and shareholders. The defendant corporation in making the deposit must be deemed to have consented that in case of insolvency the fund might be distributed according to the terms of the statute; that is to say, to creditors and shareholders residing in this State. So that by the act of the corporation itself, in availing itself of the benefit of the statute, it has devoted this fund to the benefit of the domestic creditors and shareholders; at least so far as to enable them to receive payment upon all their obligations in full. Therefore, the application of the fund to their benefit in the first instance does not infringe upon the provision of the Federal Constitution* that citizens of each State shall be entitled to all the privileges and immunities of citizens in the several States."

The United States Supreme Court has had under consideration the question of the right of the citizens of one State to share equally with the citizens of another State the assets of an insolvent corporation when distributed by the courts of the domiciliary State. A very instructive discussion on that subject will be found in *Blake* v. *McClung* (172 U. S. 239) in which the court said: " Beyond question, a State may through judicial proceedings take possession of the assets of an insolvent foreign corporation within its limits, and distribute such assets or their proceeds among creditors according to their respective rights. But may it exclude citizens of other States from such distribution until the claims of its own citizens shall have been first satisfied? In the administration of the property of an insolvent foreign corporation by the courts of the State in which it is doing business, will the Constitution of the United States permit discrimination against individual creditors of such corporations because of their being citizens of other States, and not citizens of the State in which such administration occurs?     *     *     *

---

* See U. S. Const. art. 4, § 2, subd. 1.— [REP.

" We hold such discrimination against citizens of other States to be repugnant to the second section of the Fourth Article of the Constitution of the United States, although, generally speaking, the State has the power to prescribe the conditions upon which foreign corporations may enter its territory for purposes of business. Such a power cannot be exerted with the effect of defeating or impairing rights secured to citizens of the several States by the supreme law of the land. Indeed, all the powers possessed by a State must be exercised consistently with the privileges and immunities granted or protected by the Constitution of the United States. * * *

" It may be appropriate to observe that the objections to the statute of Tennessee do not necessarily embrace enactments that are found in some of the States requiring foreign insurance corporations, as a condition of their coming into the State for purposes of business, to deposit with the State Treasurer funds sufficient to secure policy holders in its midst. Legislation of that character does not present any question of discrimination against citizens forbidden by the Constitution. Insurance funds set apart in advance for the benefit of home policy holders of a foreign insurance company doing business in the State are a trust fund of a specific kind to be administered for the exclusive benefit of certain persons. Policy holders in other States know that those particular funds are segregated from the mass of property owned by the company, and that they cannot look to them to the prejudice of those for whose special benefit they were deposited. The present case is not one of that kind. The statute of Tennessee did not make it a condition of the right of the British corporation to come into Tennessee for purposes of business that it should, at the outset, deposit with the State a fixed amount to stand exclusively or primarily for the protection of its Tennessee creditors. It allowed that corporation, after complying with the terms of the statute, to conduct its business in Tennessee as it saw fit, and did not attempt to impose any restriction upon its making contracts with or incurring liabilities to citizens of other States. It permitted that corporation to contract with citizens of other States, and then, in effect, provided that all such contracts should be subject to the condition (in case the corporation became insolvent) that creditors residing in other States should stand aside, in the distribution by the Tennessee courts of the assets of the corporation, until creditors residing in Tennessee were fully paid — not out of any funds or property specifically set aside as a trust fund, and at the outset put into the custody of the State, for the exclusive benefit, or for the benefit primarily, of Tennessee creditors, but — out of whatever assets of

any kind the corporation might have in that State when insolvency occurred.   *   *   *

" We adjudge that when the general property and assets of a private corporation, lawfully doing business in a State, are in course of administration by the courts of such State, creditors who are citizens of other States are entitled, under the Constitution of the United States, to stand upon the same plane with creditors of like class who are citizens of such State, and cannot be denied equality of right simply because they do not reside in that State, but are citizens residing in other States of the Union.   The individual plaintiffs in error were entitled to contract with this British corporation, lawfully doing business in Tennessee, and deemed and taken to be a corporation of that State; and no rule in the distribution of its assets among creditors could be applied to them as resident citizens of Ohio, and because they were not residents of Tennessee, that was not applied by the courts of Tennessee to creditors of like character who were citizens of Tennessee."

In accordance with the law as set forth above, the referee in this case and the judge at Special Term correctly held that the Texas court was within its rights in appointing a receiver and distributing the trust fund deposited at the time the application for permission to do business in the State of Texas was granted.

The only remaining question in this proceeding is, whether or not the claim of Mackey was one which could be prosecuted under the Texas Workmen's Compensation Law.   The referee held that that question could not be reopened and litigated before him; that he was not in a position to review the decision of the Texas tribunal which held this to be a proper case for compensation.   Full faith and credit must be given to the determination of that tribunal. (See U. S. Const. art. 4, § 1.)

The New York liquidator was, therefore, in error in rejecting the claim in question.   The order should be affirmed, with ten dollars costs and disbursements.

CLARKE, P. J., SMITH, MERRELL and McAVOY, JJ., concur.

Order affirmed, with ten dollars costs and disbursements.