AUDREY R. KELLY, as Insurance Commissioner of the Commonwealth of Pennsylvania, and as Such Statutory Liquidator of Empire Mutual Insurance Company (Dissolved), Appellant, v. OVERSEAS INVESTORS, INC., et al., Respondents.

First Department, November 23, 1965.

*Richard Rodwin* of counsel (*Harry Rodwin* with him on the brief; *Rodwin & Rodwin,* attorneys), for appellant.

*Lawrence M. McKenna* of counsel (*John A. Sullivan, William S. Busch, Joseph J. Ackell* and *Burton K. Katkin* with him on the brief; *Simpson Thacher & Bartlett; Cadwalader, Wickersham & Taft* and *Baer, Marks, Friedman & Berliner,* attorneys), for respondents.

*George D. Zuckerman* of counsel (*Samuel L. Russ* with him on the brief; *Louis J. Lefkowitz, Attorney-General*), for Henry Root Stern, Jr., Superintendent of Insurance, *amicus curiæ.*

BREITEL, J. P.   The complaint in an action for fraud was dismissed on the ground that plaintiff, the Insurance Commissioner of Pennsylvania, was without capacity in this State to sue on a claim of a Pennsylvania insurance company in liquidation, either as statutory liquidator or as one vested with title to the assets of the company. She appeals. On the appeal, defendants, in addition to asserting plaintiff's lack of capacity, contend, as they did at Special Term, that the complaint does not allege a cause of action on behalf of plaintiff or the company in liquidation.

The primary issues are whether Pennsylvania qualifies as a reciprocal State under the Uniform Insurers Liquidation Act (Insurance Law, §§ 517–524; 9B U. L. A., pp. 195–209), and if it does not, whether its statutory liquidator is barred from suing in this State on causes of action on which, but for the failure of Pennsylvania to qualify as a reciprocal State, she could sue. Special Term held that Pennsylvania did not qualify as a reciprocal State and that therefore plaintiff is barred from suing. While it may be true that Pennsylvania is not a reciprocal State, it is, nevertheless, concluded that this is not a bar to plaintiff's action.  Moreover, reaching the other contentions of defendants, it is concluded that the complaint states a sufficient cause of action on a claim of the insurance company in liquidation. Consequently, the order dismissing the complaint should be reversed and defendants' motion to dismiss the complaint denied.

The complaint charges defendants, insiders of the company and outsiders, with a conspiracy to inflate the statements of assets of the company by falsely including in them outstanding deposit certificates of $2 million. By devious manipulation, the certificates of deposit, in which the company had no interest, were nevertheless made out to it as " payee or bearer ", but were used only to provide copies for submission to examiners of the Pennsylvania Insurance Commissioner as evidence of the company's assets. In fact, the certificates of deposit represented transactions between banks and large industrial corporations. The complaint goes on to allege that, as a consequence, the company continued as a going enterprise incurring newer and accumulative obligations and losses, although insolvent, because the insolvency was concealed from the Pennsylvania Insurance Commissioner by the fraudulent inflation of assets.

Under the uniform law the domiciliary receiver of an insurer domiciled in a reciprocal State is recognized in this State as vested with the title to all the assets of the insurer, with limited exceptions not relevant here, with right to sue, collect, and take proof of claims (Insurance Law, §§ 519, 521). Hence, if Pennsylvania qualified as a reciprocal State there would be direct and express statutory authority for plaintiff to sue on the claim of the Pennsylvania company. However, the uniform law defines a reciprocal State as one in which " in substance and effect the provisions of this act are in force, including the provisions requiring that the insurance commissioner or equivalent insurance supervisory official be the receiver of a delinquent insurer " (Insurance Law, § 517, subd. 7).

Long before the uniform law was drafted or adopted,[1] the States of Pennsylvania and New York had had compatible liquidation statutes under which the Insurance Commissioner (or Superintendent) was vested with title to all the assets of delinquent insurers (except for State deposits and certain secured claims) and, in some measure, contained provisions of law now found in the uniform law. By reason of these compatible statutes a high degree of co-operation between the insurance officials of the two States existed, and, indeed, the courts recognized " reciprocal " powers and remedies between the States in the handling of nondomiciliary insurers (*Martyne* v. *American Union Fire Ins. Co.*, 216 N. Y. 183). Nevertheless, Pennsylvania has never adopted the uniform statute while New

1. The uniform law was adopted by the National Conference of Commissioners on Uniform State Laws in 1939. New York enacted the uniform law in 1940 (L. 1940, ch. 631).

York has, and the question is raised whether Pennsylvania now qualifies as a reciprocal State under the uniform law.

In *Dean Constr. Co.* v. *Agricultural Ins. Co.* (22 A D 2d 82) the Appellate Division for the Second Department concluded that Pennsylvania was not a reciprocal State, apparently on the ground alone that it had not adopted the uniform law. Plaintiff and New York's Superintendent of Insurance, the latter *amicus curiæ*, argue, however, that there is reciprocity if the States have statutes like in substance and effect even if they both have not enacted the uniform law in form and by name.

Accepting plaintiff's and the New York Superintendent's hypothetical contentions in this respect, and it is reasonable to do so, the statutes of the two States must be compared. There is a readily available starting place for comparison. The National Conference of Commissioners on Uniform State Laws, in adopting the uniform law, prefixed a commentary to it, which noted six salient features of past embarrassments that the uniform law was designed to eliminate (9B U. L. A., pp. 195–197; cf. 29 Am. Jur., Insurance, § 118, p. 526; 29 N. Y. Jur., Insurance, §§ 366–370).

Briefly denoted, the central remedies supplied by the uniform law to control these past embarrassments are: (1) provision that the Insurance Commissioner shall serve as receiver (9B U. L. A., § 2); (2) authority for domiciliary receivers to proceed in nondomiciliary States (*ibid.*, § 2, § 3, subd. [2]; § 10); (3) vesting of title to assets in the domiciliary receiver (*ibid.*, § 3, subd. [2]); (4) provision for nondomiciliary creditors to have the option to proceed with claims before local ancillary receivers (*ibid.*, §§ 4–5); (5) uniform application of the laws of the domiciliary State to the allowance of preferences among claims (*ibid.*, § 6); and (6) prevention of preferences for diligent nondomiciliary creditors with advance information (*ibid.*, § 9). An examination of the Pennsylvania statutes shows that its laws expressly incorporate but three of these six central provisions. Thus, Pennsylvania requires that the Insurance Commissioner serve as receiver (Purdon's Pa. Stat. Ann., tit. 40, §§ 202, 206, 207); that as domiciliary receiver the Insurance Commissioner shall have complete authority over the property and business of insolvent companies (*ibid.*, § 202); and that the Insurance Commissioner is vested with title to the assets (*ibid.*, § 206).

With respect to creditors outside the State obtaining preferences for themselves by the early commencement of attachment or similar proceedings, there is a general provision in the Pennsylvania statutes for preventing snap attachments and judgments (*ibid.*, § 202), but its effect is not in terms extended

to nondomiciliary insolvencies. However, plaintiff submitted proof that the practice was to extend such relief. On the other hand, there is no provision for making proof of claim before ancillary receivers outside the State and there is no express provision for uniformly applying preferences between in-State and out-of-State claims. Thus, using the standards suggested by the Commissioners' discussion, Pennsylvania fails to qualify as a reciprocal State within the intendment of the provisions of the uniform law (Insurance Law, § 517, subd. 7). To the same effect, see *Lewis, Roca, Scoville & Beauchamp* v. *Inland Empire Ins. Co.* (259 F. 2d 318) involving a comparison between Idaho law and the uniform law adopted in Kentucky.

In this respect, then, this court must agree with the holding in the *Dean* case (22 A D 2d 82, *supra*). It does not follow of necessity, however, that solely because Pennsylvania is not a reciprocal State its Insurance Commissioner should be barred from suing in New York on claims vested in her pursuant to the Pennsylvania statutes.

Actually, the uniform statute nowhere in terms provides that an Insurance Commissioner from a nonreciprocal State may not sue in New York. The draftsmen of the uniform law were interested in emphasizing the positive. This they did by providing that the domiciliary receiver of a reciprocal State must be permitted to sue (Insurance Law, § 519, subd. 3). Nothing is said about the recognition to be extended or denied to Insurance Commissioners of nonreciprocal States. Nevertheless, the statutory purpose was to enlarge rather than to contract the areas for the operation of interstate comity.

In the context of its history and its terms, to impute a retaliatory bar would defeat the plain purpose of the uniform law. Its purpose was not so much to compel every State to adopt its provisions *in hæc verba* (desirable as that would be) as it was to break down the differentiation among the States which theretofore had prevented some of them from extending comity to other States in the liquidation of nondomiciliary insurers.

The only possible argument in policy to support a negative implication barring, in every case, the Insurance Commissioner of a nonreciprocal State from suing, would be that the withholding of comity from a nonreciprocal State might force it eventually to adopt the uniform law. But a retaliatory purpose should not be read into this statute without express provision that a coercive sanction with respect to a sister State is intended, or unless it is demonstrated to be necessary to secure otherwise unavailable benefits to the residents of this State (see *Commissioner of Ins.* v. *Equity Gen. Ins. Co.*, 346 Mass. 233 [per

CUTTER, J.] limiting sharply the effects of an *express* retaliatory provision in the Massachusetts statutes, in applying the uniform law; 2 Couch, Insurance 2d, §§ 21.92–21.93).

The *Martyne* case (216 N. Y. 183, *supra*) demonstrates that Pennsylvania has for a long time had statutes which conform to those of New York with regard to some of the most important aspects of the uniform law. The *Martyne* case referred in the strongest terms to the substantial conformity between the laws of New York and Pennsylvania with respect to the exclusive control over liquidation by the appropriate insurance official and that under the law in each State he was vested with title to the assets and business of a delinquent insurer. Notably, the Court refused to find a negative implication in the New York statute then existent to bar an action by the Pennsylvania Commissioner (p. 191). On these bases it was held, unequivocally, that the Insurance Commissioner of Pennsylvania was entitled to sue in New York.

In the circumstances, only express language disqualifying the Pennsylvania Commissioner from suing in New York on a claim vested in her should be applied by a New York court. Moreover, it would be working a particular travesty, if the effect of the uniform law would be to force New York to refuse to give Pennsylvania the comity that it had been extending to Pennsylvania law and insurance officials for decades.[2]

Apart from the *Dean* case, there does not appear to have been any other judicial holding adopting a similarly restrictive view of the uniform law. In the *Dean* case, in taking the restrictive view, the court cited only *Martin* v. *General Amer. Cas. Co.* (226 La. 481) as bearing on the negative implication of the uniform law. However, assuming that it was correctly decided, the *Martin* case was not so broad a holding. It held only that in a uniform law State (Louisiana) an ancillary receiver for an insurer of a nonreciprocal State (Texas) could not invoke the exclusively statutory remedies provided by the uniform law. (See Uniform Insurers Liquidation Act, Ann. 46 ALR 2d 1185, 1187.) Concededly, the remedy was one only provided by the statute, namely, the voiding of an otherwise valid prior attachment by a diligent creditor, and not one that was available at common law. In short, benefits conferred only by the uniform statute were held to be available exclusively to receivers of

---

2. *Kelly* v. *Bremmerman* (23 A D 2d 346) involved an action by the Pennsylvania Insurance Commissioner in this State to recover assessments as the statutory domiciliary liquidator, but, apparently, the issues raised in this case were not raised there. In any event, there was no suggestion that the Insurance Commissioner lacked capacity to sue in New York.

reciprocal States. In this case plaintiff is suing solely on the basis of common-law remedies in the same way that she could have sued before there was a uniform law and when her right to sue would have been recognized in the *Martyne* case (*supra*). Moreover, it is not necessarily true that the *Martin* case was correctly decided; see *Ezell* v. *Equity Gen. Ins. Co.* (219 F. Supp. 51) in which a seemingly contrary result was reached.

It is in this respect, then, that this court departs from the holding and reasoning in the *Dean* case (*supra*).

Although the point is not raised in this case, it is worthy of note that because the Pennsylvania Insurance Commissioner is vested with title to the assets and claims of the company, no problem exists with her right to sue on such claims because of denial of extraterritorial effect to her official capacity (see, generally, 44 C. J. S., Insurance, § 133, pp. 730–731).

Consequently, it is concluded that under the doctrine and qualifications of the doctrine in the *Martyne* case (*supra*), if plaintiff, as a domicilary receiver of a Pennsylvania insurance company in liquidation, is vested with a claim, she is entitled to sue on it in this State.

As to whether there is a claim alleged in the complaint, there is no necessity for extended discussion. It may be true, as urged by defendants, that the effect of the fraud alleged was only to deceive subsequently acquired policyholders and subsequent creditors and that plaintiff is not vested with any right derivatively, representatively, or otherwise with the power to sue on their behalf. Nor is it necessary to consider at this time the argument proffered by plaintiff that because the insurer is a membership corporation therefore it acquires, somehow, tort claims in favor of its members arising out of transactions with the insurer.

The real point of plaintiff's pleading is that the fraudulent inflation of the assets of a going concern with the purpose and effect of disguising its insolvency so that it will continue in a losing business is a tortious and measurable wrong to the company. For an insolvent and losing business to remain in business in disregard and in illegal concealment of the fact of its insolvency and that it has been losing money may well mean that the losses would be greater or that they are likely to be greater than if the business were terminated sooner. The complaint alleges exactly such losses caused by the fraud.

Of considerable relevancy is the recent case of *Wheeler* v. *American Nat. Bank* (162 Tex. 502). In that case the pleadings raised, remarkably, some of the features present in this case. There, a receiver for an insurance company was also suing on

its behalf for fraud which consisted of a scheme by insiders and outsiders for the creation of fictitious assets, including false loans and deposit certificates. It was alleged that by reason of the fraud the insurance company, although insolvent, was able to deceive the State insurance authorities and thereby continue in business. The Texas Court of Civil Appeals (338 S. W. 2d 486) had held the complaint insufficient. In doing so, that court had emphasized the distinction between losses sustained by the company, thus giving a receiver a right of action, and losses sustained by creditors, stockholders, policyholders, or depositors, in which case the receiver would not have a right to sue. The court discussed and correlated the applicable cases on both sides of the distinction. The intermediate appellate court expressly recognized the validity of a claim, like the one asserted in this case, for losses the company may have sustained as a result of its continuance in business. But, because it found that the pleadings did not and could not allege any such loss or damage to the corporation, the complaint was dismissed. The Supreme Court of Texas, however, reversed on the ground that the corporation had nevertheless sustained a loss according to the pleadings. To do this it reasoned that the perpetrators of the fraud were estopped to establish the fictitious character of the transactions and, as a consequence, their acceptance of the return or repayment of the '' false '' assets was a conversion of the company's assets for which the receiver could sue. (Cf., e.g., *Bay Parkway Nat. Bank* v. *Shalom*, 270 N. Y. 172, 176; *Hurd* v. *Kelly*, 78 N. Y. 588, 597; *Best* v. *Thiel*, 79 N. Y. 15, 18. In each of the foregoing cases, makers of instruments evidencing indebtedness in order to swell the assets of a bank were held estopped to deny the genuineness of the transactions.) In short, the higher court sustained, and even the lower court would have sustained, the right of the receiver to sue so long as there was any claim or asset to which the company, as distinguished from its creditors, policyholders or other outsiders, was entitled as a result of the fraud. Such a claim is stated in this case. The pleadings allege that because of the fraud and the continuance in business of the Pennsylvania insurance company, insolvent and losing money, it incurred additional and accumulative losses.[3]

---

3. The present state of the pleadings does not allow of the Texas " conversion " theory to be applied to this case, although if, in fact, the certificate of deposit were delivered to or indorsed by the insurance company it might be available, and perhaps even if there had been no such delivery or indorsement. It will be recalled that the certificates of deposit in this case were payable to the insurance company or " bearer."

The principles developed in the Texas case are not new. Thus, where the pleading establishes a loss to the corporation caused by fraud or other breach of duty of its previous principals, the receiver, or equivalent fiduciary, may sue in the right of the corporation (see, e.g., *McTamany* v. *Day,* 23 Idaho 95, 102–103; *Kirrane* v. *Boone,* 334 Mo. 558, 569–571; *Scholl* v. *Allen,* 237 Ky. 716, 729–730; High, Receivers [4th ed.], § 201; Gluck and Becker, Receivers of Corporations [2d ed.], § 58; 75 C. J. S., Receivers, § 325; cf. *Golden* v. *Cervenka,* 278 Ill. 409, 427–428). On the other hand, where the pleading fails to allege any loss or damage to the corporation, as distinguished from its creditors, policy-holders, stockholders, or depositors, the general rule is that only the latter have a right to sue and not the receiver or other fiduciary official, unless the right to sue and collect on behalf of creditors is otherwise vested in him (see, e.g., *Kimmich* v. *Potter,* 112 F. 2d 135, 136 [per L. HAND, C. J.]; *Patterson* v. *Franklin,* 176 Pa. 612).

There is also in the complaint some reference to commissions having been paid to two of the outsiders to accomplish the fraud, but it is not made clear that the commissions were paid out of company funds as distinguished from the private funds of the insiders who participated in the conspiracy. Of course, if company funds were involved this would mean additional waste for which plaintiff could make claim.

Accordingly, the order granting defendants' motion to dismiss the complaint should be reversed, on the law, and the motion denied, with costs and disbursements to plaintiff-appellant.

VALENTE, McNALLY, STEVENS and STEUER, JJ., concur.

Order and judgment unanimously reversed, on the law, with $50 costs to appellant, and the motion to dismiss the complaint denied.