G. C. MURPHY COMPANY, Respondent, et al., Plaintiffs, v RESERVE INSURANCE COMPANY, Appellant. (And a Third-Party Action.)

First Department, May 1, 1980

## APPEARANCES OF COUNSEL

*John N. Gavin* of counsel *(James R. Sullivan* and *Jeremiah Marsh* with him on the briefs; *Bigham, Englar, Jones & Houston* and *Hopkins, Sutter, Mulroy, Davis & Cromartie,* attorneys), for appellant.

*C. Raymond Nelson* of counsel *(Rein, Mound & Cotton,* attorneys), for respondent.

## OPINION OF THE COURT

MURPHY, P. J.

Plaintiff G. C. Murphy Company (Murphy) brought this action against various insurers, reinsurers and brokers to recover $875,000 in unearned premiums. Defendant Reserve Insurance Company (Reserve) was served in this action in December of 1973. Since Reserve was an unauthorized foreign insurer, Special Term directed it to post an undertaking in the amount of $1,077,000 in accordance with section 59-a (subd 3, par [a]) of the Insurance Law. In compliance with this order, Reserve originally filed an undertaking of Continental Casualty Company (Continental) in the requisite amount. By order entered September 11, 1978, Reserve was permitted to substitute the undertaking of its affiliate, American Reserve Insurance Company of New York (American Reserve), for that of Continental.

American Reserve's undertaking provided, *inter alia,* as follows: "THE CONDITION OF THE ABOVE OBLIGATION is such that in the event the plaintiff recovers judgment against defendant, Reserve Insurance Company, in this action and defendant, Reserve Insurance Company pays the plaintiff the full amount of the judgment so rendered, then this obligation is to be void, otherwise to be in full force and effect; and the surety covenants, in that event it shall pay such final judgment or so much thereof as shall not have been paid by defendant, Reserve Insurance Company, up to but not exceeding the

amount of ONE MILLION SEVENTY-SEVEN THOUSAND ($1,077,000.00) DOLLARS."

In an order, entered May 16, 1979, the Circuit Court of Cook County, Illinois, appointed the Director of Insurance, State of Illinois, as the Rehabilitator of Reserve (hereinafter "the liquidator"). That same court, in an order filed May 29, 1979, placed Reserve in liquidation because of its insolvency. The latter order stated, *inter alia,* as follows:

"G. That RESERVE INSURANCE COMPANY, its officers, directors, agents and employees and all other persons be and are hereby enjoined and restrained from bringing or further prosecuting any action at law or in equity or other proceeding against said RESERVE INSURANCE COMPANY or the Director of Insurance of the State of Illinois, or from interfering in any way with the Director's conduct of the business of RESERVE INSURANCE COMPANY, or from obtaining preferences, judgments, attachments, or liens or the making of any levy against said Company or its property and assets while in possession and control of the Director, or from in any way interfering with the Director of Insurance in his possession or control of or in his title, right and interest to the property, books, records and all other assets of the said RESERVE INSURANCE COMPANY.

"H. That all persons be and are hereby enjoined and restrained from asserting any claim against the Liquidator or RESERVE INSURANCE COMPANY except insofar as such claims arise in the liquidation proceedings of RESERVE INSURANCE COMPANY.

"I. That all persons, including policyholders of RESERVE INSURANCE COMPANY and all persons asserting claims against such policyholders, be and are hereby enjoined from instituting or pursuing any action or proceeding in any court or before any administrative agency, including boards, commissions, panels or other tribunals administering workmen's compensation, occupational diseases, malpractice, arbitration or similar laws of the State of Illinois or of any other state or of the United States, which seeks in any way, directly or indirectly to contest or interfere with the Liquidator's exclusive right, title and interest to funds, recoverable under treaties and agreements of reinsurance heretofore entered into by RESERVE INSURANCE COMPANY as the ceding insurer, or otherwise".

On May 3, 1979, Special Term directed Reserve to submit additional undertakings because American Reserve's under-

taking was in excess of 10% of the surplus to policyholders (Insurance Law, §§ 47, 315). On May 14, 1979, Murphy moved to reargue. It sought a further order enjoining Reserve from removing any property that had been left with American Reserve. It also requested that Reserve deposit additional property as security. There is some indication that Reserve's counsel may have forwarded the papers on this first motion to the liquidator's counsel in Illinois. The liquidator did not appear on this first motion.

On or about July 13, 1979, Murphy made a second motion to join American Reserve as a party defendant. A Special Deputy Liquidator submitted an affidavit that neither the liquidator nor his counsel had been served with the second set of motion papers. On the basis of his limited information, the Special Deputy Liquidator stated that the liquidator would "likely" oppose the second motion. He requested a continuance of 30 days so that the liquidator could prepare his case adequately. In passing, it should also be observed that the State of New York Department of Insurance was served with the second set of motion papers but it did not respond on that motion.

Reserve, through its private counsel, made the third motion on August 7, 1979 for dismissal of the action as against it or, alternatively, for a stay of that branch of the action. There is no indication in the record that the Liquidator was served with the third set of motion papers or that the motion was made on the Liquidator's behalf.

In an order, entered November 20, 1979, Special Term (i) granted the first motion only to the extent of finding that Reserve's property, left with American Reserve, was available as part of the security, (ii) granted the second motion joining American Reserve as a party, and (iii) denied the third motion for a dismissal or a stay of the action as against Reserve.

■ Once the Director of Insurance, State of Illinois, had been appointed Rehabilitator and Liquidator of Reserve, he should have been formally served with all the papers that are subject to this appeal. Special Term should have granted a continuance to permit proper service upon the liquidator and to allow him to have an adequate opportunity to respond in this action. Nonetheless, an attorney for the liquidator appeared at the "oral" argument of this appeal and he joined in the position previously taken by the private counsel for Reserve. Since the attorney for the liquidator did not claim any prejudice, the merits of this appeal will be considered.

Both New York and Illinois have adopted the Uniform Insurers Liquidation Act ("Uniform Act"; Insurance Law, § 517 *et seq.;* Ill Rev Stat, ch 73, § 833.1 *et seq.)*. Under subdivision 2 of section 519 of the Insurance Law New York must recognize the right of the liquidator, as the domiciliary receiver (Ill Rev Stat, ch 73, § 833.1, subd 12), to seek a stay of the proceedings against Reserve (Ill Rev Stat, ch 73, § 801) and to take possession of its assets. (Ill Rev Stat, ch 73, § 833.8). Nevertheless, the portion of the May 29, 1979 order of the Circuit Court, quoted above is drawn in terms that are very sweeping.

■ The New York and Illinois statutes recognize the right of an ancillary receiver to take possession of and liquidate "special deposit claims" (Insurance Law, § 517, subd 10; § 519, subd 2; § 522, subd 3; Ill Rev Stat, ch 73, § 833.1, subd [8]; §§ 833.6, 833.8). Had an ancillary receiver been appointed in New York, Murphy would have been permitted to pursue, what is arguably a "special deposit claim" (cf. *Commissioner of Ins. v Equity Gen. Ins. Co.,* 346 Mass 233; *Collins v Dacus,* 211 Ga 779), before the ancillary receiver. However, since the New York Superintendent of Insurance has inexplicably failed to seek the appointment of an ancillary receiver (Insurance Law, § 519, subd 1), Murphy must pursue the instant claim against the liquidator in Illinois *(Vlasaty v Avco Rent-A-Car System,* 60 Misc 2d 928, 930, 931; *Zullo Lbr. v King Constr.,* 146 NJ Super 88).

In order to protect against the remote possibility that Murphy's claim against Reserve is not fully adjudicated in the Illinois courts, Reserve's motion will be granted only to the extent of staying this action as against it. In view of this stay, Murphy's motions are denied as academic. Moreover, it is thus unnecessary for this court to reach the issues of whether (i) American Reserve's undertaking under section 59-a (subd 3, par [a]) of the Insurance Law is a "special deposit claim" and, if it is, (ii) the undertaking covers any judgment obtained in the receivership proceedings rather than in the instant action (see 20 Appleman, Insurance Law and Practice § 11491, at p 339—a judgment against a principal may be a condition precedent to recovery on a bond).

Murphy's reliance upon *Dean Constr. Co. v Agricultural Ins. Co.* (42 Misc 2d 834, affd on other grounds 22 AD2d 82) would appear to be misplaced. In *Dean,* Empire Mutual Insurance Company had filed a bond under subdivision 3 of section 59-a

of the Insurance Law in order to defend in that case. Subsequently, Empire Mutual was dissolved in Pennsylvania, a nonreciprocal State under the uniform act. Empire Mutual then moved for summary judgment dismissing the *Dean* action as against it on a theory of abatement. The Second Department ruled that, under the uniform act, the common-law rule of abatement was only extended to reciprocal States. Consequently, Empire Mutual's motion was denied and that defense was dismissed. It should be emphasized that the Second Department never addressed the issue of whether the claim against Empire Mutual must be pursued under the uniform act in New York or whether it could also be pursued in that action.

Justice BREITEL, writing for the First Department in *Kelly v Overseas Investors* (24 AD2d 157, revd on other grounds 18 NY2d 622) disagreed with the holding in *Dean* that, because Pennsylvania was a nonreciprocal State, its Insurance Commissioner could not sue in New York for claims vested in her pursuant to the Pennsylvania statutes. The Court of Appeals in *Kelly* agreed with Justice BREITEL's reasoning that the Insurance Commissioner for Pennsylvania had the capacity to sue in New York but that no cause of action was stated in the complaint. In reversing, the Court of Appeals gave the Insurance Commissioner leave to replead. It may be fairly stated that *Dean's* precedential value has been seriously undermined by *Kelly.* In any event, *Dean* did not squarely address the problems presented on this appeal.

For the foregoing reasons, the order of the Supreme Court, New York County (STECHER, J.), entered November 20, 1979, which, *inter alia,* added American Reserve as a party and denied a stay of the action as against Reserve, should be modified, on the law, and Reserve's motion should be granted to the extent of staying the action as against it with leave given to Murphy to file its claim against the Illinois Liquidator and Murphy's motions should be denied as academic, without costs.

LUPIANO, J. (dissenting in part). The facts are fairly stated in the opinion of the Presiding Justice. However, my view of the relevant statutory law and legal principles impels a different conclusion. The deposit of security envisioned by section 59-a of the Insurance Law is analogous for all practical purposes to a special deposit within the contemplation of the Uniform Insurers Liquidation Act (Insurance Law, §§ 517-524).

This conclusion is buttressed by the policy considerations underlying section 59-a of the Insurance Law and by construing said statute in light of sections 519 (esp subds 2, 30), 521 and 522 (esp subd 3) of the Insurance Law. Plaintiff is endeavoring to discharge its claim by resort to the deposit of security posted with the clerk of the court by the foreign insurer to secure the payment of any final judgment which may be rendered in this action against such foreign insurer. If no ancillary receiver has been appointed in this State, the claim must be filed with the domiciliary receiver (Insurance Law, § 521, subd 1). Of course, "[t]he domiciliary receiver of an insurer domiciled in a reciprocal state may sue in this state to recover any assets of such insurer to which he may be entitled under the laws of this state" (Insurance Law, § 519, subd 3).

Priority respecting a valid special deposit claim is assured under the Uniform Insurers Liquidation Act by virtue of subdivision 3 of section 522 of the Insurance Law. This statute was in existence at the time of the deposits of security herein. The various parties are, therefore, deemed to have constructive knowledge of the statute and its operative effect on their contractual relationships. Accordingly, the failure of plaintiff to obtain a judgment against the foreign insurer prior to the order (entered May 16, 1979) in Illinois appointing a receiver in liquidation due to the insurer's insolvency, may not serve, of itself, to frustrate plaintiff's endeavor to discharge its claim by resort to the special security deposit. After all, it was the making of such deposit which frustrated plaintiff in securing a speedy entry of judgment by default. By filing such deposit, the foreign insurer was enabled to contest the claim in New York. Under these circumstances, the determination of the viability of the plaintiff's claim binding upon the domiciliary receiver or an ancillary receiver, if one is appointed, suffices to expose the deposit to the satisfaction of that claim. Any other result would serve to frustrate the public policy of affording residents of this State protection against obstacles encountered in pursuing rights which arise out of claims against foreign insurers and might well offend against traditional principles of equity. This also follows from the fact that the distribution out of the deposit is not predicated upon the insolvency or the liquidation of the foreign insurer, but merely on the fact that the given claim secured by that deposit has not been paid.

"The method most frequently pursued by creditors to reach

funds or securities deposited by a corporation with a state official as security for its obligations, and the one most generally approved by the courts, is that of application for the appointment of a resident receiver of the corporation" (2 Couch, Insurance 2d, § 22:110).

Elucidation regarding the complex issues posed on this appeal may be gleaned from analysis of *Matter of Casualty Co. of Amer. (Mackey Claim)* (206 App Div 314) wherein we were confronted with the obverse factual situation. In that case, the insurer was a New York corporation which had made a special deposit of securities valued at $50,000 with the Treasurer of the State of Texas as a condition prerequisite to obtaining permission to do business in Texas. One year later, the insurer surrendered its right to do business in Texas, but failed to comply with Texas law requiring the filing of a bond for the protection of its outstanding contracts. However, the special deposit was left. Subsequently, two years later, the New York State Superintendent of Insurance was appointed receiver (liquidator) of the New York insurer. Thereafter, a Texas court appointed a receiver (by analogy, an ancillary receiver) to take possession of all assets of the New York defunct insurer in the State of Texas, which assets consisted of the special deposit already alluded to. Various creditors in Texas filed claims with the Texas receiver and the allowed claims were paid out of this deposit, thus exhausting this asset. Subsequently, certain Texas creditors who had not obtained satisfaction out of this asset, filed claims with the New York receiver (the domiciliary receiver) which were disallowed on the ground that the courts of Texas permitted the distribution by the receiver appointed in that State and had thus discriminated against citizens of New York who were creditors of the insurer.

We held that the special deposit by the New York insurer in Texas was to be deemed a trust fund for the protection of its obligations under its policies issued within the State of Texas, citing *People v Granite State Provident Assn.* (161 NY 492). We noted that "[t]he Texas courts have followed the New York Court of Appeals decision so far as they have proceeded. They have not distributed, and it does not appear that they have collected any of the general assets found in Texas; they have applied this trust fund only to the payments for which it was deposited. The opinion of the Texas Court governing this matter will be found in the case of *Phillips v. Perue* (111 Tex.

112; 229 S.W. Rep. 849) where it was said: 'The questions certified are: 1. Whether the deposit with the State Treasurer constituted a trust fund to which the Texas creditors of the company had a claim superior to the right of * * * [the] liquidator of the company under the laws of the State of New York * * * The decision of the first question depends entirely upon the effect of our statutes governing the deposit. It was fully within the power of the State to prescribe the condition on which the foreign corporation might pursue its business within its borders. It therefore had the right to require of the corporation, if deemed necessary, the special deposit as a trust fund for the protection of its obligations arising under its policies so issued within the State * * * Having the authority to require the deposit and to give it the character of a trust fund for the benefit of such special creditors, if the Legislature has so provided by law, *neither the corporation, having availed itself of the benefits of the law, nor any one succeeding to its rights, can complain of an enforcement of the law.* A law to which the corporation had voluntarily subjected itself would necessarily be binding upon its shareholders and other creditors and anyone standing in the stead of the corporation' * * * [T]he law stated in the decision of the Texas court is in conformity with the law of the State of New York" *(Matter of Casualty Co. of Amer. [Mackey Claim], supra,* at pp 318-320; emphasis supplied).

We further noted the observation of the United States Supreme Court in *Blake v McClung* (172 US 239) that "[i]nsurance funds set apart in advance for the benefit of home policy holders of a foreign insurance company doing business in the State are a trust fund of a specific kind to be administered for the exclusive benefit of certain persons. Policyholders in other States know that those particular funds are segregated from the mass of property owned by the company, and that they cannot look to them to the prejudice of those for whose special benefit they were deposited" *(Matter of Casualty Co. of Amer. [Mackey Claim], supra,* at p 322). Accordingly, we concluded that the Texas court was within its rights in appointing a receiver and distributing the fund deposited in Texas and that, in consequence, the New York receiver was incorrect in barring unsatisfied claims of Texas creditors in the New York liquidation proceeding merely because some Texas creditors were successful in obtaining priority and satisfaction of their claims from the fund deposited in Texas.

In light of the legal principles and well-reasoned rationale set forth in *Matter of Casualty Co. of America (Mackey Claim),* it must be concluded under the circumstances herein that the deposit of security given by the foreign insurer pursuant to section 59-a of the Insurance Law is in the nature of a trust fund and that plaintiff is entitled to seek the aid of the courts of this State in endeavoring to apply it to the purpose of which it was intended.

It has been aptly noted that "[t]he fact that assets of an insurer within two or more states are being liquidated does not affect the rights within a given state of the parties benefited by the deposit made in that state. The persons benefited by the local deposit may assert their claims against that local deposit and are not required to assert their claims in the domiciliary liquidation proceedings" (2 Couch, Insurance 2d, § 22:111; see, also, *Collins v Dacus,* 211 Ga 779; *Andrews v Cahoon,* 196 Va 790).

It is further noted that the domiciliary receiver has now espoused the position advanced by the foreign insurer in this appeal. If the domiciliary receiver chooses to avail himself of the right to seek recovery of the deposit which is the subject of this lawsuit by becoming a party to this action pursuant to subdivision 1 of section 521 of the Insurance Law, then there would be no need for the appointment of an ancillary receiver. However, failing such action on the domiciliary receiver's part, plaintiff is entitled to seek appointment of an ancillary receiver.

Accordingly, the order appealed from herein should be modified, on the law, as follows: The motion by defendant Reserve Insurance Company seeking dismissal or, in the alternative, a stay of the action as against it, should be granted to the extent of staying the action as against it with leave to plaintiff to request of the domiciliary receiver that he become a party to this action and advance his claim to the deposit pursuant to subdivision 1 of section 521 of the Insurance Law, and failing such action on the part of the domiciliary receiver, with further leave to plaintiff to seek the appointment of an ancillary receiver under the Uniform Insurers Liquidation Act, which receiver, by statute, must be the Superintendent of Insurance of this State (Insurance Law, § 519, subd 1). As so modified, the order should be affirmed.

SILVERMAN, J. (dissenting). I would modify the order appealed from to the extent of striking the provision with

respect to property heretofore received by American Reserve Insurance Company of New York ("American Reserve") from defendant Reserve Insurance Company ("Reserve") to secure the undertaking of American Reserve (the second decretal paragraph), and otherwise affirm the order appealed from.

Critical to my thinking is the fact that pursuant to section 59-a (subd 3, par [a]) of the Insurance Law, a bond has been furnished by American Reserve to secure the payment of any final judgment which may be rendered in the New York action brought by plaintiff G. C. Murphy Company. By virtue of that undertaking, plaintiff ceased to be merely an unsecured general creditor of Reserve but became a creditor whose claim was guaranteed by a third person, American Reserve. That guarantee is a property right of which plaintiff cannot be deprived for procedural convenience. (See *Pierre Assoc. v Citizens Cas. Co. of N. Y.*, 32 AD2d 495, 496-497.)

1. To relegate plaintiff to its remedy in the Illinois liquidation proceeding would endanger that property right for these reasons: (a) The undertaking, bearing the caption of the New York action, states as a condition of the obligation of American Reserve on the bond "that in the event the plaintiff recovers judgment against defendant, Reserve Insurance Company, *in this action*" (italics mine), i.e., in the New York action. Literally, the bond does not appear to cover any judgment that may be rendered in Illinois. (b) It is not clear on this record whether the Illinois court even has jurisdiction over American Reserve. Thus, there is a substantial risk that in the Illinois proceeding plaintiff would be just an unsecured general creditor of an insolvent insurance company rather than, as plaintiff now is, a creditor whose claim has been guaranteed by a bond issued by another insurance company.

2. The Uniform Insurers Liquidation Act (Insurance Law, §§ 517-524) recognizes the right of the owner of a secured claim to "resort to the security" (§ 522, subd 4), and it appears to recognize, at least some proceedings with respect to the security, i.e., adjudication of the amount of the deficiency that may be made "by a court of competent jurisdiction in proceedings in which the domiciliary receiver has had notice and opportunity to be heard," *id.,* which would seem to cover the New York Supreme Court in this action. The statutory definition of "secured claim" (Insurance Law, § 517, subd 11) does not explicitly include a claim secured by a surety company bond, but it does state that it includes "any claim secured by

mortgage [etc.], or otherwise." I think that particularly in view of the importance of protecting vested property rights, plaintiff's claim secured by American Reserve's bond should be considered a secured claim. To enforce that secured claim requires that Reserve shall continue as a defendant in the action in New York, at least for the purpose of permitting plaintiff to obtain a judgment against Reserve (if entitled thereto), which would then be covered by the American Reserve bond. This is really essentially no different from continuing to name a mortgagor as a defendant in an action to enforce a mortgage or any other kind of lien or security.

3. I do not think that the New York action should be stayed by us. An important test for staying an action in a domestic forum because of the pendency of a judicial proceeding in a foreign forum is whether the proceeding in the foreign forum will probably dispose of the issues in the domestic forum. (Cf. *Pierre Assoc. v Citizens Cas. Co. of N. Y.*, 32 AD2d, *supra,* at p 497; *Kaufman v Baker* 11 AD2d 1013, affd 9 NY2d 771.) The present case does not meet that test for the reasons stated in 1. (a) and (b) above. And in addition, because Reserve is probably insolvent, when plaintiff gets all through with the liquidation proceeding in Illinois, it will presumably still have to sue American Reserve on the bond. This would be particularly onerous as the present action in New York has already been pending for six years. The precise object of the statute requiring the bond to be furnished was so that New York creditors should not have to proceed in some foreign jurisdiction against a possibly insolvent insurer but should be able to collect their judgment in New York promptly on a bond issued by a solvent insurer.

4. However, I do not think that Special Term should have directed that property received by American Reserve from Reserve to secure the undertaking from American Reserve should be deemed the equivalent of reinsurance and available as part of the security provided *to plaintiff* herein. Such a provision increases plaintiff's substantive property rights and we should no more do that than we should take away plaintiff's property rights. As Special Term recognized, such funds have "presumably, been deposited to secure, not the plaintiff, but American Reserve (New York) on its bond." This would seem to be clear under sections 47 and 315 of the Insurance Law, pursuant to which the deposit was made. Section 47 of the Insurance Law forbids an "insurer" from exposing "itself" to loss on any one risk to an amount exceeding 10% of its

surplus. And subdivision 1 of section 315 of the Insurance Law provides that the net amount of such exposure shall be deemed within the limit of 10% "if such company" is protected by a deposit of property in trust "for its protection." *(Id.* subd 1, par [c].) Thus the security deposited with American Reserve is for the security of American Reserve and not plaintiff. Vis-à-vis American Reserve, plaintiff has an unsecured in personam claim on American Reserve's bond. Special Term should not have transformed it into a secured claim as against American Reserve.

5. The result I urge is not inconsistent with the uniform act. That act is primarily concerned with the liquidation of the insolvent company and claims against it, i.e., claims against Reserve. But here we are concerned with claims not against Reserve but against American Reserve. So far as the assets of Reserve are concerned, that can still be administered in Illinois. To the extent that American Reserve has to pay anything to plaintiff, it will presumably be subrogated to plaintiff's claim against Reserve and may pursue that claim in the Illinois proceeding. And by the same token, any dispute between Reserve and American Reserve as to the security furnished by Reserve to American Reserve can also be determined in the Illinois proceeding (if jurisdiction against American Reserve exists in Illinois). But we should keep here the claim by plaintiff against American Reserve, with only such nominal retention of the proceeding against Reserve as is necessary to enforce plaintiff's right on the bond and not to destroy plaintiff's property right on the bond issued by American Reserve.

Consistently with the views stated in this opinion, the Illinois injunction should be interpreted not to restrain the present action to the extent I have suggested.

Ross and CARRO, JJ., concur with MURPHY, P. J.; LUPIANO, J., dissents in part in an opinion; SILVERMAN, J., dissents in an opinion.

Order, Supreme Court, New York County, entered on November 20, 1979, modified, on the law, without costs and without disbursements, and Reserve's motion is granted to the extent of staying the action as against it with leave given to Murphy to file its claim against the Illinois Liquidator and Murphy's motions are denied as academic.